Nicole Owens
EXECUTIVE DIRECTOR
Christopher M. Sanchez, Idaho Bar No. 12070
Jonah J. Horwitz, Idaho Bar No. 10494
Assistant Federal Defenders
FEDERAL DEFENDER SERVICES OF IDAHO
702 W. Idaho Street, Suite 900, Boise, ID 83702-8929
Telephone: (208) 331-5530; Facsimile: (208) 331-5559
ECF:   Jonah_Horwitz@fd.org
          Christopher_M_Sanchez@fd.org

*Attorneys for Plaintiff Thomas Eugene Creech*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **THOMAS EUGENE CREECH,** | CASE NO. 1:24-cv-00066-AKB |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF MOTION TO EXPEDITE DISCOVERY** |
| **IDAHO COMMISSION OF PARDONS AND PAROLE**; **JAN M. BENNETTS**, Ada County Prosecuting Attorney, in her official capacity, | |
| Defendants. | **EXECUTION SCHEDULED FOR FEBRUARY 28, 2024** |

For the reasons that follow, Plaintiff Thomas Eugene Creech respectfully moves to expedite discovery. Federal Rule of Civil Procedure 26(d)(1) empowers courts to permit expedited discovery, before a rule 26(f) conference, upon a showing of "good cause." *Allcare Dental Mgmt., LLC v. Zrinyi,* No. CV-08-407-S-BLW, 2008 WL 4649131, *1 (D. Idaho Oct. 20, 2008); *see Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009) (applying good-cause standard); *see also St. Louis Group, Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011)

Memorandum in Support of Motion to Expedite Discovery – Page 1

("An increasing majority of district courts have . . . adopted a 'good cause' standard to determine whether to authorize expedited discovery."). Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Allcare Dental Mgmt., LLC*, 2008 WL 4649131, at *1. To determine whether good cause exists, courts commonly consider factors including, but not limited to: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Am. LegalNet*, 673 F. Supp. 2d at 1067; *see also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 11-CV-01846-LHK, 2011 WL 1938154, at *1 (N.D. Cal. May 18, 2011). Mr. Creech can satisfy each factor.

I.  **A motion for a preliminary injunction is pending.**

The first factor is whether a preliminary injunction is pending. "[E]xpedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Veeder-Root Fuelquest, LLC v. Wisdom*, No. 2:21-cv-00352-RAJ, 2021 WL 1209257, at *3 (W.D. Wash. Mar. 31, 2021) (quoting *Ellsworth Assocs, Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996)). Because of this, "courts have *routinely* granted expedited discovery in cases involving challenges to constitutionality of government action." *Ellsworth Assocs., Inc.*, 917 F. Supp. at 844 (citing *Optic-Electronic Corp. v. United States*, 683 F. Supp. 269, 271 (D.D.C. 1987)). Indeed, "courts *often* find good cause" for expedited

Memorandum in Support of Motion to Expedite Discovery – Page 2

discovery "when confronted with a pending motion for preliminary injunction." *Facebook, Inc. v. Various, Inc.*, No. c-11-01805-SBA (DMR), 2011 WL 2437433, at *3 (N.D. Cal. June 16, 2011) (emphasis added). This only makes sense. Expedited discovery "better enable[s] the court to judge the parties' interests and respective chances for success on the merits" – a judgment the Court needs to make when evaluating whether to grant a preliminary injunction. *Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984) (granting expedited discovery).

Because Mr. Creech has filed a motion for preliminary injunction, *see* Dkt. 4, this factor weighs heavily in his favor. Mr. Creech does not seek discovery in advance of filing for a preliminary injunction. *Cf. Human Rights Watch v. Drug Enforcement Administration*, No. CV-15-2573-PSG (JPRx), 2015 WL 13648069, at *2 (C.D. Cal. July 10, 2015) (denying expedited discovery where "[p]laintiff has not yet filed a preliminary injunction" but acknowledging that "courts often find good cause when confronted with a *pending* motion for preliminary injunction" (emphasis added) (citation omitted)). Instead, he has already filed his motion for preliminary injunction, placing well-defined issues before the Court. The limited discovery he now seeks is germane to the precise issues and claims in his preliminary-injunction motion.

## II. The discovery sought is narrow.

The second factor is the breadth of the discovery requests. Expedited discovery is appropriate where it would "substantially contribute to moving [a] case

Memorandum in Support of Motion to Expedite Discovery – Page 3

forward" and is "narrowly tailored to this benefit." *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 277 (N.D. Cal. 2002); *see also Ellsworth Assocs.*, 917 F. Supp. at 844 (granting expedited discovery where "the material [sought] is germane to [plaintiff's] claims and the discovery . . . will expedite the resolution of this matter").

Here, Mr. Creech's discovery requests focus on specific and carefully articulated categories of information that directly relate to his preliminary motion:

    a. Specific information related to the bases for the prosecution's assertions to the Idaho Commission of Pardons and Parole ("the Commission") during the commutation hearing about the murder of Daniel Walker; the timeline and nature of the prosecution's investigation into the Walker murder; the prosecution's communications with San Bernardino authorities; and the prosecution's decision not to provide Mr. Creech with notice of the claims it would be making about the Walker murder to the Idaho Commission of Pardons and Parole. *See* Dkt. 4-1 at 4–15; 20–26.

    b. Requests targeted at the nature and provenance of the sock depicted in the prosecution's PowerPoint slide, including chain-of-custody documentation; relevant police reports and photographs prepared from the date of the crime to the date of the commutation hearing; access to the physical evidence; and the original photograph. *See* Dkt. 4-1 at 15–26.

Memorandum in Support of Motion to Expedite Discovery – Page 4

   c. Information related to the Commission's decision not to find a replacement vote for the recused Commissioner. *See* Dkt. 4-1 at 26–28.

All of this requested discovery pertains directly to Mr. Creech's legal claim. For instance, to examine the sock evidence that the prosecution presented to the Commission, both an expert in photography and in handwriting would need a higher quality photograph than the one featured in the PDF of the PowerPoint slide. In order to assess the legitimacy of the photograph, photograph expert Richard Quindry would need the original JPEG or RAW file from the camera that took the photo. *See* Ex. 1 at 1. For handwriting expert Susan Abbey, direct access to the sock would give her the ability to determine if the handwriting on the sock matches Mr. Creech's handwriting. *See* 2 at 1. Short of that, Ms. Abbey would at a minimum require additional photos of the sock to make the comparison. *Id.* Both experts' analysis would directly support the portion of Mr. Creech's claim related to the sock. Dkt. 4-1 at 15–26. The narrowly-tailored, well-defined nature of Mr. Creech's expedited discovery requests weighs in favor of granting expedited discovery in this case.

### III. The purpose of expedited discovery is appropriate.

The third factor is the purpose of expedited discovery. This factor also weighs heavily in favor of granting expedited discovery in this case. Mr. Creech's requests for expedited discovery are limited to the production of evidence supporting his preliminary injunction motion. Narrowly focused, as they are, on facts that directly

Memorandum in Support of Motion to Expedite Discovery – Page 5

support his preliminary-injunction claims, his discovery requests go to the heart of his motion for a preliminary injunction, and the Court should therefore grant Mr. Creech's request for expedited discovery. *See Washington v. Lumber Liquidators, Inc.*, No. 15-cv-01475-JST, 2015 WL 2089992, at *2 (N.D. Cal. May 5, 2015) ("Because Plaintiffs seek development of the factual record in support of their preliminary injunction, which seeks to preserve the status quo, the purpose for which discovery is sought weighs in favor of expedited discovery.").

### IV. The discovery sought would not be unduly burdensome.

Mr. Creech's requested expedited discovery is not unduly burdensome. Conscious of the need for expedited action, Mr. Creech's has carefully tailored his discovery requests to minimize the burden on the State's time and resources.

### V. How far in advance of discovery the motion is filed

Mr. Creech recognizes that the final factor, how far in advance of the typical discovery process the request was made, cuts against his motion. However, he notes that his death warrant was signed the day after the commutation decision was rendered, the event triggering his complaint. Under those circumstances, it would be unfair to punish Mr. Creech for the timing. In any event, this single factor does not outweigh the strong showing Mr. Creech has made on the others, and the motion remains meritorious.

### VI. Mr. Creech's specific discovery requests

To provide the Court with the most concrete possible understanding of the discovery Mr. Creech wishes to pursue, he will outline representative examples of

Memorandum in Support of Motion to Expedite Discovery – Page 6

his requests below. With respect to each request or set of requests, Mr. Creech will describe why the material is relevant to his motion for a preliminary injunction.

### A. Depositions

Depositions are a basic discovery tool under Federal Rule of Civil Procedure 30.[1] There are several depositions Mr. Creech considers necessary to the litigation of his preliminary-injunction motion.

First, Mr. Creech would depose Jill Longhurst. Ms. Longhurst was the lawyer from the Ada County Prosecuting Attorney's Office ("ACPO") who took the lead on advocating against clemency in Mr. Creech's commutation proceedings. At the January 19, 2024 commutation hearing, Ms. Longhurst was the person who told the Commission that Mr. Creech was guilty of the Walker murder. She was also the one who revealed the purported photograph of the murder-weapon sock for the first time. As such, Ms. Longhurst is in possession of critical information regarding the claims upon which Mr. Creech is seeking injunctive relief. *See generally* Dkt. 4-1 at 4–26.

Second, Mr. Creech would depose Tom Taylor. Mr. Taylor appears to be the source of the "new" information supposedly proving Mr. Creech's guilt in the Walker murder. *See* Dkt. 4-1 at 13. According to Mr. Taylor, the information in question stems from interviews he conducted where Mr. Creech described killing a man in a

---

[1] If the Court were unwilling to allow oral depositions under Rule 30, it could in the alternative authorize written depositions pursuant to Federal Rule of Civil Procedure 31.

Memorandum in Support of Motion to Expedite Discovery – Page 7

van in the Barstow, California area who had a diamond ring. *See id.* However, undersigned counsel has no record of any such interview. *See id.* Therefore, it is necessary to depose Mr. Taylor to ascertain the origins of this information, its authenticity, and the reason it is only now surfacing fifty years later.

Third, Mr. Creech would depose Wade Spain. Mr. Spain is an investigator for ACPO. When the ACPO issued a press release on January 29, 2024, touting the denial of clemency, it thanked Mr. Spain in particular, "as he was instrumental in providing San Bernardino County with evidence that led to San Bernardino County announcing Mr. Creech as the suspect in the" Walker case. Ex. 3. The question of whether there is in fact any such evidence, and if so what it is, lies at the heart of Mr. Creech's Walker-related claim. *See* Dkt. 4-1 at 4–15.

Fourth, Mr. Creech would depose the principal custodian of the sock that was allegedly photographed. The preliminary-injunction motion raises the prospect that the image of the sock presented to the Commission falsely depicted Mr. Creech's name on it. *See* Dkt. 4-1 at 15–20. Accordingly, it is essential that undersigned counsel depose the custodian to investigate the circumstances under which the sock was supposedly photographed, and possibly altered.

Fifth, if time allowed, Mr. Creech would desire to depose the key actors in San Bernardino, including Detective Justin Carty and Sergeant Justin Giles, *see* Dkt. 4-4 at 1, San Bernardino Sheriff Shannon Dicus, and cold-case detective Greg Myler, all of whom have direct knowledge of whether it was justified for the ACPO to declare the Walker case solved and Mr. Creech the murderer.

Memorandum in Support of Motion to Expedite Discovery – Page 8

B.     **Requests for Productions**

Federal Rule of Civil Procedure 34 authorizes requests for production of documents (RFPs). Mr. Creech will divide up his RFPs with reference to the three different subjects they fall under: the sock; the Walker case; and the tie vote at the Commission.

1. **Sock**

As set forth above, Mr. Creech intends to use discovery—if permitted—to investigate whether the sock or the photograph of it were improperly modified. The following material to be sought in RFPs would go directly to that area:

    a. The original formatted version of the photograph used in the PowerPoint slide of the sock, e.g., JPEG, RAW, etc. *See* Ex. 1.

    b. Records related to the chain of custody of the photograph of the socks used in the prosecutor's PowerPoint slide.

    c. Records that document the existence of any socks with Mr. Creech's name written on them.

2. **Walker Case**

The ACPO presented a slide at the commutation hearing and made the claim that Mr. Creech murdered Daniel Walker, *see* Dkt. 4-1 at 4–5, and that the San Bernardino County Sheriff's Department ("SBSD") had closed its case after a thorough investigation, *see id.,* Dkt. 4-3 at 2. There is also reason to believe the ACPO was in communication with the San Bernardino County District Attorney's Office about the case. *See, e.g.*, Dkt. 4-4 at 2 (SBSD press release stating "The San

Bernardino District Attorney's Office reviewed the case and is in consultation with the Ada County District Attorney's Office.").

Counsel also believes that the prosecution provided the Commission with a letter from Daniel Walker's brother Doug Walker. *See* Dkt. 4-1 at 21. And, according to the SBSD, their investigation began on November 15, 2023. *See* Dkt. 4-4 at 2. With the above facts in mind, and in order to support the part of the claim related to the prosecution's use of the Daniel Walker murder to argue against life, Mr. Creech would request the following from the ACPO:

    a. The statement the prosecutor submitted from Doug Walker to the Commission.

    b. Any and all records pertaining to the 1974 death of Daniel Walker through the present.

    c. Records of any and all contact/correspondence between the ACPO and Doug Walker, brother of Daniel A. Walker, from October 1974 to the present.

    d. Records of contact/correspondence between the ACPO and any representative of the media from September 1, 2023 through the present regarding the Daniel Walker case.

    e. Records of contact/correspondence between the ACPO relating to the Walker case, from September 1, 2023 through the present, and involving the Idaho Department of Correction, the Ada

      County Sheriff's Office, the SBSD, and the San Bernardino District Attorney's Office.

  f.  Copies of all versions of the news releases prepared by the ACPO related to the Daniel Walker case.

  g.  Reports written by Tom Taylor about the Daniel Walker case.

  h.  Transcripts and/or recordings of any interviews with Mr. Creech and Tom Taylor about the Daniel Walker case.

  i.  Reports written by Tom Taylor about the Daniel Walker case.

  j.  Reports, transcripts, and/or recordings related to the interview that took place between Mr. Creech and Detective Ted Dykes of the SBSD.

  k.  Any records relating to the April 26, 1975 interview of Mr. Creech while he was in the custody of the State of Idaho and relating at least in part to alleged crimes occurring in California.

  l.  Reports, transcripts, and or recordings related to any interviews between Mr. Creech and anyone with the SBSD or San Bernardino County District Attorney's Office.

Lastly, on the Walker murder, the Commission considered the prosecution's statements and PowerPoint slides in its decision. *See generally* Dkt. 4-1 at 4–15. The prosecution also stated that Doug Walker had sent a letter of concern to the Commission as well. *See* Dkt. 4-1 at 21. Moreover, the only potential source of new

Memorandum in Support of Motion to Expedite Discovery – Page 11

information undersigned counsel have identified is Tom Taylor. *See* Dkt. 4-1 at 13–15. Therefore, Mr. Creech requests the following from the Commission:

> a. All contact between Tom Taylor and any of the seven Commissioners from September 1, 2023 to the present.
>
> b. All records of contact between the Commission and Tom Taylor from September 1, 2023 to the present

### 3. Commissioner Recusal

Mr. Creech contends in his motion for a preliminary injunction that his due process rights were violated by the three-three tie vote at the Commission leading to the denial of his commutation petition. *See* Dkt. 4-1 at 26–28. Under Idaho law, any favorable recommendation by the Commission would have gone to the Governor. *See* Idaho Code § 20-1016(2). The Governor is the official who appoints the Commissioners. *See* Idaho Code § 20-1002(1), (2). It is also the Governor who determines "the duties and responsibilities" of the Executive Director to the Commission. Idaho Code § 10-1002(9). In the past, there have been communications between the Commission and the Governor in advance of commutation decisions in capital cases. *See* Ex. 4. Here, such communications would potentially shed light on the recusal and whether any consideration was given to avoiding the due process problem by allowing a replacement to vote in place of the disqualified Commission. Mr. Creech consequently wishes to propound an RFP for all communications between the Commission and the Governor regarding Mr. Creech's commutation proceedings.

Memorandum in Support of Motion to Expedite Discovery – Page 12

C. **Interrogatories**

Civil discovery invariably involves interrogatories served under Federal Rule of Civil Procedure 33. As before, Mr. Creech will separate his interrogatories out between the sock issue and the Walker case.

1. **Sock**

With respect to the sock, the following interrogatories are germane to the preliminary injunction for reasons expressed above:

    a. Where is the sock?

    b. Provide names of all individuals who handled, accessed, or photographed the sock from September 1, 2023 to the present.

    c. Identify the brand of camera or cameras used to take the photograph of the sock presented at the commutation hearing.

    d. Name the software and programs used to download and/or store the sock photos.

2. **Walker Case**

With respect to Mr. Walker, Mr. Creech envisions the following interrogatories to the ACPO:

    a. What information did Mr. Spain provide to San Bernardino County that supposedly led to the announcement of Mr. Creech as the suspect? *See* Ex. 3.

Memorandum in Support of Motion to Expedite Discovery – Page 13

      b. How did Mr. Taylor inform the ACPO about his supposed recollection of his interviews with Mr. Creech regarding the Walker case?

      c. When did Mr. Taylor inform the ACPO about his supposed recollection of his interviews with Mr. Creech regarding the Walker case?

      d. Who made the decision to describe the Walker case as "solved" in the press release issued by the ACPO on the day of the commutation hearing? *See* Dkt. 4-3.

**D. Subpoenas**

In discovery in the U.S. District Courts, litigants are entitled to serve subpoenas on non-parties under Federal Rule of Civil Procedure 45.

**1. Sock**

Based on points made earlier, Mr. Creech would utilize subpoenas to demand the following documents:

      a. Evidence logs dating back to the date of the crime in 1981 or for as far back as they exist, as kept by the Ada County Sheriff's Office or whatever other agency is safeguarding the material.

**2. Walker Case**

Based on points made earlier, Mr. Creech would subpoena the following documents in connection with the Walker issue:

Memorandum in Support of Motion to Expedite Discovery – Page 14

    a. Any records held by the Ada County Sheriff's Office pertaining to Daniel Walker.

    b. Any communications involving any of the following entities pertaining to Daniel Walker, from September 1, 2023 to the present:

        i. Idaho Department of Correction

        ii. Idaho Attorney General's Office

        iii. SBSD

        iv. San Bernardino District Attorney's Office

    c. Reports written by Tom Taylor regarding Mr. Creech and/or Daniel Walker in the possession of the Ada County Sheriff's Office.

    d. Transcripts/recordings related to any interviews involving Mr. Creech and San Bernardino law enforcement officials such as Detective Dykes in the possession of the Ada County Sheriff's Office or the SBSD.

    e. Any records in the possession of the Idaho Attorney General's Office pertaining to the Walker case.

## VII. Conclusion

For the reasons set forth above, Mr. Creech respectfully asks for expedited discovery under the conditions set forth above.

DATED this 9th day of February 2024.

/s/ Christopher M. Sanchez
Christopher M. Sanchez
Jonah J. Horwitz
Federal Defender Services of Idaho

*Attorneys for Plaintiff Thomas Eugene Creech*

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of February 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which is designed to send a Notice of Electronic Filing to persons including the following:

Dayton P. Reed
Heather McCarthy
Sherry A. Morgan
civilpafiles@adacounty.id.gov
Counsel for Defendant Bennetts

Karin Magnelli
kmagnell@idoc.idaho.gov
Counsel for Defendant Parole Commission

/s/ Julie Hill
Julie Hill