**JAN M. BENNETTS**
ADA COUNTY PROSECUTING ATTORNEY

**DAYTON P. REED**
**HEATHER M. McCARTHY**
**SHERRY A. MORGAN**
Deputy Prosecuting Attorneys
Civil Division
200 W. Front Street, Room 3191
Boise, ID  83702
Telephone:  (208) 287-7700
Facsimile:  (208) 287-7719
Idaho State Bar Nos. 10775, 6404, & 5296
Email:  civilpafiles@adacounty.id.gov

*Attorneys for Ada County Prosecutor Jan M. Bennetts*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS EUGENE CREECH,<br><br>      Plaintiff,<br><br>vs.<br><br>IDAHO COMMISSION OF PARDONS AND PAROLE; JAN M. BENNETTS, Ada County Prosecuting Attorney, in her official capacity,<br><br>      Defendant. | **Case No. 1:24-cv-066-AKB**<br><br>**PROSECUTOR BENNETTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION [DKT. 4]** |

    The overriding factor concerning Creech's Commutation Hearing is that Idaho law places the final decision regarding death sentence clemency with the Governor of Idaho.[1] On Monday,

---

[1] "The commission shall have authority to grant commutations and pardons after conviction and judgment for offenses, or conspiracies to commit any offense, for which the maximum punishment allowed by law at the time of sentencing is death or life imprisonment only after first presenting a recommendation to the governor. If the governor approves the commission's recommendation within thirty (30) days of presentment, the commission's pardon or commutation shall issue. If the governor rejects the commission's recommendation within thirty (30) days of presentment or takes
(cont.)

January 29, 2024, following the Idaho Commission of Pardons and Parole's ("Commission") decision denying Creech's request for clemency, Governor Brad Little issued the following statement:

> As Governor, my job is to follow the law and ensure that lawful criminal sentences are carried out. Thomas Creech is a convicted serial killer responsible for acts of extreme violence. Our court system convicted Creech, and he was lawfully sentenced to death. As Governor, **I have zero intention of taking any action that would halt or delay Creech's execution**. His lawful and just sentence must be carried out as ordered by the court. Justice has been delayed long enough.[2]

This lawsuit is therefore an exercise in futility for Creech, given this strong statement issued by the Governor two weeks ago. Creech's arguments must be viewed through this lens.

After receiving decades of due process through the judicial system, Creech requested an act of grace from the executive branch whose prerogative is to exercise discretion in granting it. After hearing and considering Creech's evidence, witnesses, information, and arguments—including the same arguments about the quality of evidence presented that he brings in this case—the Commission exercised its discretion and declined to recommend a commutation. And the final decisionmaker in the executive branch, the Governor, concurs. A preliminary injunction based on Creech's hope for a second chance at a hearing—with no chance of receiving a commutation—should be denied.

---

no action on the recommendation before the passage of thirty (30) days from presentment, no pardon or commutation shall issue from the commission, and the commission's recommendation shall be of no force or effect." Idaho Code § 20–1016(2).

[2] "Gov. Little comments on Creech execution moving forward," OFFICE OF THE GOVERNOR, January 29, 2024, https://gov.idaho.gov/pressrelease/gov-little-comments-on-creech-execution-moving-forward/. (emphasis added).

## I. FACTS & PROCEDURAL HISTORY

### A. David Jensen Murder

The facts of this case began on May 13, 1981, when Creech brutally murdered fellow inmate David Jensen ("Jensen") by beating him with a sock full of batteries, and then kicking him in the throat.[3] *Creech v. Richardson*, 59 F.4th 372, 376–77 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 291, 217 L. Ed. 2d 132 (2023). Creech attacked Jensen by repeatedly hitting him in the head with the sock full of batteries until the plate embedded in Jensen's skull shattered, causing his skull to cave in and blood to splash on the walls and floor. *Id*. Creech took breaks during the beating, and after the sock broke and the batteries fell out, he kicked Jensen in the throat while Jensen lay sprawled on the floor.[4] *Id*.

Creech pled guilty to the Jensen murder, and on January 25, 1982, in a written decision, Fourth Judicial District Judge Robert Newhouse sentenced Creech to death. *Id*. at 378. Creech filed multiple appeals which resulted in two resentencings. The final resentencing hearing lasted for five days and was held before Judge Newhouse in March and April of 1995. *Id*. at 379. Judge Newhouse found that, "The protection of society demands that Thomas Eugene Creech receive the death penalty." *Id*. at 380.

As echoed by the United States Supreme Court:

> The facts underlying this case could not be more chilling. Thomas Creech has admitted to killing or participating in the killing of at least 26 people. The bodies of 11 of his victims—who were shot, stabbed, beaten, or strangled to death—have been recovered in seven States. Creech has said repeatedly that, unless he is

---

[3] Jensen, who was in prison for stealing a car, was twenty-three years old at the time of his murder. He suffered from physical and mental disabilities, was partially paralyzed, and a plastic plate had been surgically embedded in his skull. *Creech v. Richardson*, 59 F.4th at 376.

[4] At the time of the murder, Creech was serving two life sentences for the murders of Edward Thomas Arnold and John Wayne Bradford in 1974 in Valley County, Idaho. He had also been convicted of murdering Vivian Grant Robinson in 1974 in Sacramento, California, and William Joseph Dean in 1974 in Portland, Oregon. [Dkt. 5-3, p. 6, ll. 8-11]

completely isolated from humanity, he likely will continue killing. And he has
identified by name three people outside prison walls he intends to kill if given the
opportunity.

*Arave v. Creech*, 507 U.S. 463, 465–66 (1993).

Procedurally, Creech's guilty plea and conviction for the Jensen murder has woven in and out of both state and federal courts for more than 40 years. For a detailed discussion of the complex procedural history, please see *Creech v. Richardson*, 59 F.4th at 376, and *Creech v. State*, No. 50336, 2024 WL 510105 (Idaho Feb. 9, 2024).

### B. January 19, 2024 Commutation Hearing

On October 18, 2023, the Commission granted Creech's request for a clemency hearing ("Hearing") relating to his death sentence for the Jensen murder, and scheduled the Hearing for January 19, 2024. [Dkt. 4-2, ¶ 9] Ashley Dowell, the Executive Director for the Commission, issued a memo dated November 13, 2023, outlining the Hearing procedures to be followed. [Dkt. 5-7] Following additional communications between the Ada County Prosecuting Attorney's Office ("ACPA") and Creech's attorneys from the Federal Defenders of Idaho ("FDI"), Ms. Dowell issued another memo on December 20, 2023. Dec. of T. Smith, Ex. A.

These memos from Ms. Dowell ("Memos") outlined the exact procedures to be followed by the parties. Importantly, the Memos reminded the ACPA and FDI:

> As discussed in the meeting, commutations are a matter of clemency, and the hearing is not an adversarial proceeding. As such, the parties will make presentations to the Commission, with only previously identified supporter(s), identified victim(s), and attorneys speaking, and will not be allowed to call witnesses for questioning, cross examine the other party, or object to what is being said during the parties' presentation time.
>
> \* \* \*
>
> Each party will be provided a table in the hearing room and will have the ability to run their own PowerPoint presentation.

* * *

> The investigation report and attached documents ("hearing packet") has been sent to the Commission for review on December 20, 2023.

*Id*.

The Memos do not provide that the ACPA and FDI were to share their respective PowerPoint presentations with the Commission or the other side. At the Hearing, the ACPA presented its PowerPoint presentation in accordance with the Commission's rules, and the FDI also "delivered a lengthy PowerPoint presentation." [Dkt. 4-2, ¶ 39] Pursuant to the Commission's Hearing rules, the ACPA did not provide its PowerPoint presentation to the Commission or FDI prior to the Hearing, and the FDI did not provide its PowerPoint to the ACPA prior to the Hearing. Dec. of T. Smith, ¶ 7.

1. **Daniel Walker Murder**

During the Closing Arguments section of the ACPA's PowerPoint presentation, Deputy Prosecutor Jill Longhurst referred to eleven (11) murders in which Creech was convicted of, plead guilty to, or admitted to, including the murder of Daniel Walker. *Id*., Ex. B, p. 5. In 1975, Creech admitted to killing a man in San Bernadino County, California, which facts mirror the facts involved in the Walker murder. [Dkt. 4-5, pp. 22-29]

The Declaration of Christopher M. Sanchez, counsel for Creech, recognizes as much: "The ACPA [Hearing] exhibits do contain a transcript of an interview [with Creech] that took place on April 28, 1975. At that interview, Creech claimed to have killed a man under circumstances that resemble the facts in the Walker case." [Dkt. 4-2 ¶ 33]

### 2. Rebuttal of Creech's False Statements

In his presentation to the Commission, Creech's attorney asserted that Creech takes responsibility for his actions:

> Mr. Creech also continues to live with the knowledge of what he did, the horrible price that he exacted from the victims of his crimes. Attorney Horwitz believes living with the understanding of the consequences of his actions is punishment itself. Mr. Creech's wife, LeAnn previously stated that he does not deserve death for things that he did in his 20s, things that he knows he shouldn't have done and have haunted him ever since. She believes he has suffered for everything he did, not only because he is in prison but because of what it did to him as a person, what he has had to come to terms with. She stated that Tom looks back and cannot believe he was ever that person, and he struggles to understand how he got to that point.

Dec. of T. Smith, Ex. B, pp. 4–5.

In her main presentation, Prosecutor Longhurst addressed Creech's continued blaming of Jensen for his murder:

> Ms. Longhurst explained that the biggest lie Thomas Creech ever told was that the brutal beating of [redacted] was self-defense. Mr. Creech wanted to go into isolation, and in order to get what he wanted, he used violence, and it worked. He has always used violence or threats of it to get what he wants.
>
> *   *   *
>
> Self-defense, Ms. Longhurst said, is part of the lie that Thomas Creech has been trying to tell them. Ms. Longhurst asked how Thomas Creech can claim he is remorseful if he cannot accept any wrongdoing.

*Id.*, Ex. B, pp. 5, 9 (redactions supplied by the Commission). She also referenced socks that were collected as evidence from the Jensen murder scene:

> Ms. Longhurst added that in Thomas Creech's cell, officers discovered a sock that matched the one used with the batteries, and a toothbrush identical to the one attached to a razor blade, pictured in [redacted] cell.

*Id.*, p. 9 (redactions supplied by the Commission).

During the Closing Arguments section of the ACPA's PowerPoint presentation, Prosecutor Longhurst rebutted Creech's statements to the investigator, and as part of that showed a photo of

two of the socks that were collected as evidence from the Jensen murder scene for demonstrative purposes. [Dkt. 5-5] As reflected in the Hearing Minutes, Prosecutor Longhurst offered rebuttal as to Creech's statements to the investigator:

> Mr. Creech claims he is remorseful, but just months ago, Creech told Mr. Maddox [the investigator] that he killed [redacted] in self-defense. Creech blamed [redacted] for being murdered. When asked if he believes he deserves the death penalty, Creech said he did not know, because [redacted] attacked him. During his interview with Mr. Maddox, Creech explained that the socks had their names written on them, and the sock that he used as a weapon was labeled "Garza." Ms. Longhurst displayed a photograph of the matching sock that was found in Creech's cell. The name on the sock is "Creech."

Dec. of T. Smith, Ex. B, p. 13 (redaction supplied by the Commission).

### C. Creech's Post-Hearing Communications to the Commission

On January 22, 2024, three days after the Hearing concluded and before the Commission made its decision, the FDI sent the Commission a letter asking for it to delay its commutation decision "for at least two months so that further investigation can be done into two significant assertions that were made for the first time by the prosecutor, Jill Longhurst, at last Friday's hearing." [Dkt. 5-8] The letter describes at length the same issues it has presented to this Court—the Daniel Walker murder and the photograph of the sock. *Id*.

On January 25, 2024, the FDI sent a follow-up letter to the Commission, and provided further arguments in support of its request to delay the Commission's commutation decision while the FDI "further investigates" claims related to Creech's criminal case. [Dkt. 5-9]

On January 29, 2024, the FDI sent yet another lengthy letter to the Commission, with even more arguments as to why the need to delay the decision was necessary. [Dkt. 5-10]

On January 22, 2024, the Idaho Attorney General's Office issued its own letter to the Commission, in which it responded to and refuted the post-Hearing claims made by the FDI. [Dkt. 5-12]

Despite Creech's "further investigation" arguments and request to delay the decision, on January 29, 2024, the Commission denied Creech's petition for clemency. This civil lawsuit and request for a preliminary injunction was subsequently filed by Creech.

## II. STANDARD

This Court has explained the preliminary injunction standard:

> Federal Rule of Civil Procedure 65 governs the entry of a preliminary injunction. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). To obtain relief, the party seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The first factor "is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Further, the "possibility" of irreparable harm is insufficient; irreparable injury must be "likely" in the absence of an injunction. *Winter*, 555 U.S. at 22.

*BigRentz, Inc. v. KGM Enterprises*, LLC, No. 1:22-CV-00430-AKB, 2023 WL 7496726, at *1 (D. Idaho Nov. 13, 2023).

## III. ARGUMENT

For the following reasons, Creech fails to meet his heavy burden to show that the extraordinary and drastic remedy of a preliminary injunction should be granted to halt his execution. He fails to make the most important showing, a likelihood of success on the merits.

### A. Judicial review of clemency hearings is rarely, if ever, appropriate and only minimal due process is applicable to these discretionary, executive decisions.

There is no constitutional or inherent right to commutation of a sentence, and a petition for commutation "is simply a unilateral hope." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280 (1998) (quoting *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)). Such petitions are the purview of the executive branch, rather than the judicial. *Id.* at 276. Because "pardon and commutation decisions have not traditionally been the business of courts," the Supreme Court has recognized that "they are rarely, if ever, appropriate subjects for judicial review." *Dumschat*, 452 U.S. at 464. This is not one of those rare cases.

Justice O'Connor gave the definitive explanation as to what those rare cases are in her concurrence in *Ohio Adult Parole Authority. v. Woodard*, 523 U.S. 272 (1998). The principal opinion in *Woodard*, authored by Chief Justice Rehnquist, recognized the nature of clemency as a "matter of grace" within the "broad discretion" of the "ultimate decisionmaker, the Governor." *Id.* at 280–81, 282. These principles of executive discretion stand in contrast to the strictures and procedures of the judicial system that adjudicates the guilt or innocence of a criminal defendant. *Id.* at 284–85. And unlike the judicial system, Due Process did not require regimented procedural protections regarding commutation proceedings. *Id.* at 285. The Chief Justice and seven other Justices concluded that Ohio's clemency procedures did not violate due process. *Id.* at 282, 288.

While Justice O'Connor agreed that Ohio's procedures did not violate due process, she and three other Justices desired to clarify that they did not believe in a complete absence of "constitutional safeguards" in clemency proceedings, but that there must be some kind of "*minimal procedural safeguards*" that apply. *Id.* at 288–89 (O'Connor, J., concurring in part). The only examples this concurrence provided of sufficiently egregious situations to justify judicial intervention were "a scheme whereby a state official flipped a coin to determine whether to grant

clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id.* at 289. Justice O'Connor identified multiple alleged deficiencies that fail to amount to a due process violation, including an allegation that the death row inmate "was precluded from testifying or submitting documentary evidence at the hearing." *Id.* at 289–90.

Justice Stevens wrote a separate concurrence in which no other Justice joined. He explained that he agreed with Justice O'Connor that there must be some kind of "minimal, perhaps even barely perceptible, procedural safeguards" regarding clemency proceedings. *Id.* at 290 (Stevens, J., concurring in part and dissenting in part) (internal quotation marks omitted). The opinion that some minimal safeguards must exist was therefore held by five Justices. But Justice Stevens' suggestion that "procedures infected by bribery, personal or political animosity, or the deliberate fabrication of false evidence" could potentially state a due process violation in the right case, *Id.* at 290–91, was not joined by any other justice.

### B. The 14th Amendment Due Process Clause does not allow Creech to challenge the substance of information presented at his clemency hearing.

Creech cites Justice Stevens' concurrence and directly accuses the ACPA of violating due process by deliberately fabricating and submitting false evidence to the Commission. But these spurious allegations, aside from recklessly casting aspersions, amount to an improper attempt to expand judicial review into the substance of the executive's discretionary decision-making.[5]

Justice Stevens' concurrence in *Woodard*—joined by no other Justice—is not the law. And the reasoning of his dicta about "deliberate fabrication of false evidence" has not been followed. The Sixth Circuit was confronted with the allegation that the state presented fabricated expert

---

[5] The ACPA vehemently denies Creech's baseless allegations that it fabricated and falsified evidence.

testimony during clemency proceedings when a death row inmate sought to re-open a petition for writ of habeas corpus. *Workman v. Bell*, 245 F.3d 849, 851–52 (6th Cir. 2001). The court first observed that it does not "sit as super appeals courts over state commutation proceedings," and that "pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Id.* at 852 (cleaned up). The court relied upon Justice O'Connor's concurrence in *Woodard* concluding that minimal procedural safeguards apply to clemency proceedings and recounted the clarification that "Judicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id.* (quoting *Woodard*, 523 U.S. at 289). The court found that the allegations failed to meet the *Woodard* standard for minimal due process, explaining,

> He attacks the evidence presented at his clemency proceeding by saying that it was erroneous or false. Thus, he attacks the proceedings' substantive merits. *We are not authorized to review the substantive merits of a clemency proceeding.* Our only review is to see that there are some minimal procedural safeguards. It is not our duty to determine the quality of the evidence considered by the governor or his board.

*Id.* at 852–53 (6th Cir. 2001) (emphasis added) (cleaned up) (citing *Faulder v. Texas Board of Pardons and Paroles*, 178 F.3d 343, 344 (5th Cir.1999); *Duvall v. Keating*, 162 F.3d 1058, 1061 (10th Cir.1998)). On this basis, the court denied the motion to re-open. *Id.* at 853.

Workman subsequently filed a lawsuit much like Creech's, seeking a temporary restraining order to stay his execution until his claims—including "the use of false testimony against him" at the clemency hearing—could be adjudicated, *Workman v. Summers*, 136 F. Supp. 2d 896, 897 (M.D. Tenn.), aff'd, 8 F. App'x 371 (6th Cir. 2001). Citing Justice O'Connor's concurrence, the court determined that "some minimal level of procedural due process applies to clemency

proceedings," although the ultimate decision to grant or deny clemency is within the Governor's discretion. *Id.* at 898. The court also cited Justice O'Connor's explanation of what constitutes minimal due process, as courts applying *Woodard* routinely do: "Judicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id.* (quoting *Woodard*, 523 U.S. at 289). The court concluded that, even when viewing the facts in the light most favorable to Workman, that he received the minimal due process required for a clemency proceeding, and that "No Court has required the level of due process requested by Workman for clemency proceedings." *Id.* at 899.

After that TRO was denied (which was upheld by the Sixth Circuit in an unpublished opinion), the defendants in *Workman* filed a motion to dismiss. *Workman v. Summers*, No. 3:01-0290, 2001 WL 1782877 (M.D. Tenn. Oct. 31, 2001), aff'd, 111 F. App'x 369 (6th Cir. 2004). In opposing the motion, Workman relied on *Woodard* and *Young v. Hayes*, 218 F.3d 850 (8th Cir.2000), just as Creech does. *Id.* at *4. Workman argued that "allegations that State actors rigged clemency proceedings so that the Governor would receive false and misleading evidence state claims for relief." *Id.* The court rejected Workman's arguments and granted the motion to dismiss on the same grounds as the denial of the TRO. *Id.*

Just like Workman, Creech attempts to challenge the substantive merits of the clemency proceeding by alleging that the ACPA deliberately fabricated false evidence regarding both the murder of Walker and the sock Creech used to murder Jensen.[6] He attempts to steer the Court's

---

[6] The Hearing Minutes reflect that Prosecutor Longhurst never stated the sock shown in a picture was the murder weapon. Dec. of T. Smith, Ex. B, p. 9 ("Ms. Longhurst added that in Thomas Creech's cell, officers discovered a sock that matched the one used with the batteries"), p. 13 ("Ms. Longhurst displayed a photograph of the matching sock that was found in Creech's cell.").

attention away from the central issue: whether Creech's clemency determination was an arbitrary "coin flip" and whether he was arbitrarily denied the ability to petition for clemency. The answer to both is no. Creech, represented by counsel, presented hours of information to the Commission in a hearing that the Commission, in its discretion, allowed him to have. The Commission made a determination that it would not recommend commutation after a lengthy hearing at which Creech was free to present any information he believed was relevant. Subsequently, the Governor, who is the ultimate decision-maker, communicated that he would use his discretion to deny clemency. Creech was afforded more than the minimal safeguards required, and his allegations challenging the quality of the information presented do not state a due process claim, even if he is not satisfied with the outcome of his petition. The discretionary decisions of the executive branch did not arise in the rare situations that might subject them to judicial interference.

### C. Creech has no due process right to preview the information to be presented at his clemency hearing.

Creech cites *Wilson v. U.S. District Court for Northern District of California*, 161 F.3d 1185 (9th Cir. 1998), for the proposition that a prosecutor who presents information in a clemency hearing is required by the U.S. Constitution to provide all the evidence she intends to present to the inmate in advance of the hearing. But there is no such constitutional due process right, and *Wilson* did not hold there was.

*Wilson* was about the executive branch, who makes the clemency determination, misleading the inmate about what information it would rely upon in making that determination. It had nothing to do with a prosecutor failing to allow the inmate to preview her presentation to the executive decision-maker. In *Wilson*, the plaintiff sought a TRO, alleging that the defendants (the governor and a prison warden were named) sent a letter that defined the scope of information that

would be relevant to the clemency decision, that this scope excluded evidence that questioned the inmate's guilt, but the governor ultimately denied clemency based on the absence of information that questioned the inmate's guilt. *Id.* at 1186. In other words, the party responsible for making the clemency determination told the inmate not to submit the very evidence it sought when making the clemency determination. The Ninth Circuit held that these allegations were sufficient to state a claim of violation of due process. *Id.* at 1187.

Creech's allegations against the ACPA are distinguishable from those in *Wilson*. The ACPA did not prescribe the scope of evidence or procedures of the clemency hearing. As demonstrated by the Commission's Memos, procedures were worked out in advance between the FDI and the ACPA. Creech was well aware of the scope of the hearing, his attorneys having been involved in defining it, and the ACPA did not issue the official communication about it, the Commission did. While the written submissions from both parties and the investigator would be shared, nothing in this procedure discussed the parties being required to share their presentations with each other. Creech was free to present information that the ACPA had not seen, and the ACPA was free to present evidence that Creech had not seen.

Nothing about this mutually agreed-upon procedure violates due process. The Commission still made its determination based on reason, rather than arbitrarily, such as with a coin flip. *See Woodard*, 523 U.S. at 289 (1998) (O'Connor, J., concurring in part). Creech was given access to the procedure above and beyond what minimal due process requires, in that he had the opportunity not only to petition for commutation, but also to participate in a hearing, be represented by counsel at that hearing, and see the ACPA's written submissions in advance. When minimal due process does not even require a party have the opportunity to testify or submit evidence at the hearing, *Id.* at 289–90, Creech received all that minimal due process requires, and more.

### D. The ACPA did not deprive Creech of due process because he was able to present his concerns to the Commission post-Hearing, which did not find the concerns sufficient to defer deciding on the commutation petition.

Creech cannot show that the ACPA deprived him of any liberty or life interest because the executive branch—the Governor and the Commission—have the prerogative to make clemency recommendations and decisions, not the ACPA. After the clemency hearing, Creech submitted his concerns about the quality of evidence to these decision-makers, and these decision-makers chose not to defer the commutation petition despite those concerns. This implies that they did not feel these concerns merited further discussion or changed their view. And it's the Commission's and Governor's view that ultimately matter on the question of whether Creech's sentence is commuted or not.

Creech brought his claims against the ACPA under § 1983. A § 1983 cause of action requires the plaintiff to show that "(1) a person acting under color of State law; (2) subjects or causes to be subjected to deprivation; (3) a U.S. citizen or person in the jurisdiction of the United States; (4) of a right, privilege, or immunity secured by the Constitution and laws." *Chaudhry v. Aragon*, 68 F.4th 1161, 1169 (9th Cir. 2023). To establish the second element, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury; the defendant's action must be both the cause-in-fact and the proximate cause, or else there is no liability. *Id.* at 1169–70 (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008); *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996)).

The ACPA is neither the proximate cause nor the cause-in-fact of Creech not receiving a commutation. That decision is the prerogative of the Governor to make, in conjunction with a recommendation from the Commission. Creech made the Commission aware of his concerns about the quality of evidence and prior notice of what the ACPA would present at the Hearing. [Dkts. 5-8, 5-9, 5-10] Creech requested that the Commission defer issuing its recommendation until he had

the opportunity to present further information on these issues, but the Commission chose not to defer the petition. By opting not to defer the petition in light of Creech's concerns, the Commission impliedly determined that the concerns did not merit looking into further. The concerns did not move the needle for the Commission, which determines in its own discretion what information it will base its determinations on. Ultimately, the Governor has the role to grant or deny commutation of a death sentence. *State v. Pizzuto*, 171 Idaho 100, 518 P.3d 796, 807–08 (2022), reh'g denied (Oct. 28, 2022). The Governor has communicated that he does not intend to grant a commutation or any other clemency to Creech.

Thus, given that the clemency application process is complete, given that the Commission recommended denial despite Creech's concerns about the quality of evidence at the hearing, and given that the Governor has already expressed his intention to grant Creech no commutation, Creech cannot show that the ACPA is the proximate cause of any deprivation of a life or liberty interest. Any deprivation of those interests will occur because all due process has been afforded through decades of litigation and a proper clemency application process that meets *minimal* due process requirements, and because the executive to whom the discretion over clemency belongs will have exercised that prerogative to deny it.

### IV. CONCLUSION

The Court should deny the motion for preliminary injunction because Creech does not state a claim for due process violation and therefore has no chance of success on the merits. This is not one of the rare cases of an arbitrary, coin-flip decision that justify judicial interference with an executive function. Creech was provided more than the *minimal* due process required. And in the end, after Creech had decades of judicial due process and the opportunity to present to the Commission, the Governor—who is the ultimate decisionmaker regarding commutations—has

made his determination that Creech's request is denied. The preliminary injunction should likewise be denied.

**DATED** this 13th day of February, 2024.

                                                **JAN M. BENNETTS**
                                                Ada County Prosecuting Attorney

By:    */s/ Dayton P. Reed*
        Dayton P. Reed
        Deputy Prosecuting Attorney

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this 13th day of February, 2024, I served a true and correct copy of the foregoing *Prosecutor Bennetts' Opposition to Motion for Preliminary Injunction [Dkt. 4]* to the following person(s) by the following method:

| | |
|---|---|
| Christopher Sanchez | christopher_m_sanchez@fd.org |
| Jonah J. Horwitz | jonah_horwitz@fd.org |
| Deborah A. Czuba | deborah_a_czuba@fd.org |
| Mary E. Spears | mary_spears@fd.org |
| Nicole R. Gabriel | nicole_gabriel@fd.org |
| FEDERAL DEFENDER SERVICES OF IDAHO | |

  AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated as follows:

  N/A

                By: /s/ Chyvonne Tiedemann
                   Legal Assistant