UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS EUGENE CREECH,<br><br>Plaintiff,<br><br>v.<br><br>IDAHO COMMISSION OF PARDONS AND PAROLE and JAN BENNETTS, Ada County Prosecuting Attorney, in her official capacity,<br><br>Defendants. | Case No. 1:24-cv-00066-AKB<br><br>**MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br><u>FOR IMMEDIATE FILING</u> |

Plaintiff Thomas Eugene Creech is a death-row inmate in the custody of the Idaho Department of Correction (IDOC). In 1995, Creech was sentenced to death for beating another inmate to death with a sock filled with batteries. On October 16, 2023, a state district court issued a death warrant for Creech's execution. That court subsequently stayed the warrant pending the Idaho Commission of Pardons and Parole's consideration of Creech's petition for clemency. The Commission held a hearing on that petition on January 19, 2024, and on January 29, it issued a decision denying commutation. The next day, January 30, the state district court again issued a death warrant for Creech's execution. That execution is presently scheduled for February 28.

On February 5, 2024, Creech filed this action under 42 U.S.C. § 1983, alleging the Commission and the Ada County Prosecutor's Office (ACPO) violated his due process rights during his clemency hearing. Creech requests this Court enjoin his execution during this case's pendency. Specifically, pending before the Court in this case are Creech's Motion for Preliminary Injunction (Dkt. 4), his Motion to Expedite Discovery (Dkt. 10), and Plaintiff's Motion for Leave to Submit Notice of Factual Development. (Dkt. 17).

In support of his preliminary injunction motion, Creech presents the Declaration of Christopher M. Sanchez, counsel for Creech, discussing the absence of certain evidence in Creech's litigation case files. (Dkt. 4-2). The remaining information Creech offers, including numerous newspaper articles, is not accompanied by an affidavit either authenticating or describing the information. Rather, the information is simply attached as "exhibits" to Creech's memorandum in support of his preliminary injunction motion. *See K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) (noting basis for preliminary injunction should be supported by affidavits or verified complaint); 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2949 (3d ed. 2023) (noting preliminary injunction request should be supported by affidavits).

The Court finds oral argument will not significantly aid its decision-making process and decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). *See also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed, the Court denies Creech's motions for discovery and a preliminary injunction. Although Creech will suffer irreparable harm in the absence of a preliminary injunction, he has not clearly shown a likelihood of success on the merits of his due process claim. Further, the balance of equities and the public interest weigh against granting an injunction.

## BACKGROUND

In October 2023, the Commission granted Creech a clemency hearing to decide whether to recommend that Idaho's Governor commute Creech's death sentence to a sentence of fixed life imprisonment. The Commission is generally comprised of seven commissioners. In October,

however, one of the commissioners recused himself from participating in the hearing. (Dkt. 12-1 at ¶ 10).

The ACPO was designated to present on the State's behalf at the clemency hearing.  Before the hearing, the Commission's executive director met with the parties several times and sent the parties at least two memoranda discussing in detail the procedures and process for the hearing. (Dkt. 12-2 at p. 3 (November 13, 2023 memo); Dkt. 12-2 at p. 7 (December 20, 2023 memo)). For example, these memoranda stated that:

> [C]ommutations are a matter of clemency, and the hearing is not an adversarial proceeding. As such, the parties will make presentations to the Commission, with only identified supporter(s), identified victim(s), and attorneys speaking, and will not be allowed to call witnesses for questioning, cross examine the other party, or object to what is being said during the parties' presentation time.

(Dkt. 12-2 at pp. 4, 8). Further, another memorandum stated:

> Each party will get a copy of the entire hearing packet, with all attachments and party submissions, on December 20, 2023. Victim statements have been removed from the investigative packet and will be submitted separately to the Commission. The parties agree to not make or retain any copy of the hearing packet and return their copy of the hearing packet, including all attachments and party submissions, at the conclusion of the hearing. Any further distribution of the hearing packet will be pursuant to the Idaho Public Records Act.

(*Id.* at p. 9). The record does not reflect that Creech objected to these or any of the Commission's proposed procedures or processes, including proceeding to hearing with only six commissioners. (Dkt. 12-1 at p. 10).

Per the Commission's outlined procedures, Creech, the State, and the Commission's investigators all presented materials for the Commission to consider at the hearing. On December 20, 2023, the Commission provided those materials to both parties in a "hearing packet." According to Creech, the State's materials consisted of 2,952 pages of documents, although the first twenty-seven pages were removed with the notation that they were "victim

related documents." (Dkt. 1 at ¶¶ 41-43). Nothing in the record indicates Creech objected to not receiving these redacted materials.

The State's materials, which Creech did receive, did not contain any reference to Daniel Walker, a 1974 murder victim in San Bernardino County, California. (*Id*. at ¶¶ 47-48). At the hearing, however, the ACPO—as part of its argument against clemency—claimed that San Bernardino authorities had "solved" Walker's murder; Creech was responsible for it; and the case was "closed." (*Id*. at ¶ 52, 60). Also, on the day of the hearing, the ACPO issued a press release informing the public that Creech had murdered Walker. (*Id*. at ¶ 63). The San Bernardino Sheriff's Department also issued a press release stating Creech had been "identified as the *suspect*" in Walker's murder. (*Id*. at ¶ 66).

Creech alleges, however, that the ACPO had never publicly accused Creech of the San Bernardino murder. (*Id*. at ¶¶ 58, 121-24). Further, Creech alleges the ACPO's statements to the Commission and its press release claiming Walker's murder had been "solved" after a "thorough investigation" were false. (*Id*. at ¶¶ 64-70). It appears, however, that Creech was at least a suspect in the crime. In 1975, Creech confessed to a murder with significant similarities to Walker's murder. (*Id*. at ¶ 82-87).

Additionally, Creech alleges the ACPO revealed for the first time at the clemency hearing a photograph of a sock with Creech's name written on it in marker. This photograph was not contained in the materials provided to Creech before the hearing. (*Id*. at ¶ 49). According to Creech, there are "discrepancies" between the image of the sock presented to the Commission and the images of the crime scene. (*Id*. at ¶ 172). He suggests the photograph was compromised or fabricated. (*Id*. at ¶¶ 172-75). After the commutation hearing, Creech's counsel "made several

requests that the Commission postpone its decision" until Creech could investigate the Walker murder and the sock photograph. (*Id.* at ¶ 126). The Commission denied these requests, however.

On January 29, 2024, the Commission issued its decision denying Creech's clemency petition and declining to recommend that the Governor commute his death-sentence. The vote was split: three commissioners voted to deny clemency, and three voted to grant clemency. Because Idaho law requires a majority of the commissioners to recommend commutations, the Commission did not recommend that the Governor commute Creech's sentence.[1]

The Commission articulated the reasoning for its decision in writing. The three Commissioners who voted in favor of a clemency recommendation explained:

> This decision was not based on any doubt or question about Mr. Creech's guilt or the horrific nature of his crime. The Commissioners do not believe Mr. Creech is worthy of mercy, but that the discretion of the Commission allows for grace to be given even when undeserved. While the Commissioners noted a possibility that Mr. Creech has changed in the years since his crime and considered his current age and health, this decision was not based on the actions and conduct of Mr. Creech. The Commissioner's decision to recommend a commutation was based on the time that has elapsed since Mr. Creech committed this horrific crime. In addition, the Commissioners were influenced by commentary from Judge Newhouse, the sentencing judge, and former Ada County deputy prosecutor Mr. Jim Harris, who no longer believe that a sentence of death is appropriate for Mr. Creech's conviction. Finally, the change in law requiring that a death sentence be decided by a jury rather than a judge also influenced the recommendation to commute Mr. Creech's sentence to life in prison without parole.

(Dkt. 12-3 at p. 42).

Meanwhile, the three Commissioners who voted against clemency reasoned:

> We do not believe Mr. Creech is worthy of grace or mercy. This decision was based on the coldblooded nature of David Dale Jensen's murder and the sheer number of

---

[1] The Idaho Constitution grants a majority of the Commission the "power to remit fines and forfeitures, and, only as provided by statute, to grant commutations and pardons after conviction and judgment." Idaho Const., Art. IV, § 7. In cases like Creech's, where the maximum sentence is death (or life imprisonment), the Commission's decision on a clemency petition is not final; rather, a majority vote for commutation constitutes only a recommendation to the Governor, who then makes the final clemency decision. Idaho Code § 20-1016(2).

victims that Mr. Creech has created over his lifetime, which shows that he does not place value on human life, other than his own. Mr. Creech was not interested in telling the truth about his additional crimes and violent history and was reluctant and unwilling to completely disclose the number of people he has killed. Further, the Commission believes that Mr. Creech is not capable of true remorse and would take another life if it benefitted [sic] him. He has shown he can still manipulate others to get what he wants. The Commission believes that the Jensen family would not receive justice if Mr. Creech received clemency, and above all else that they deserve closure in this case. If the Commission cannot uphold the death penalty in this case, then the death penalty means nothing in the state of Idaho.

*(Id.* at p. 43).

Following the Commission's denial of clemency, Creech filed this action alleging a single claim of relief for violation of his due process rights. Specifically, Creech alleges the Commission and ACPO violated his due process rights by:

(1) failing to give him adequate notice of the allegations and evidence the prosecution would present; (2) presenting false evidence against him regarding the murder of Daniel Walker and the status of San Bernardino's investigation into the crime; (3) presenting potentially tampered with evidence in the form of an image of a sock with Mr. Creech's name written on it; (4) failing to give notice that the prosecution would be using the image of the sock in its presentation and failing to make examination of the sock available to Mr. Creech prior to the hearing; (5) failing to allow Mr. Creech the chance to contest the evidence against him once he had informed the Commission of the issues with the prosecution's presentation; and (6) denying Mr. Creech's petition on the basis of a tie vote when he had a reasonable expectation that each side would be required to persuade the same name of Commissioners to secure a favorable outcome.

(Dkt. 1 at ¶ 180).

Creech requests a preliminary injunction prohibiting his execution "while the instant case is being litigated." (Dkt. 4 at p. 1). Ultimately, Creech seeks a new clemency hearing in which "(1) the [State] is forbidden from using false evidence against him; (2) [he] is given notice of what the [Commission] will consider in its decision; (3) he is given notice of the evidence to be used against him by the [State], and (4) he is given a reasonable amount of time to investigate the [State's] new claims raised for the first time at his clemency hearing." (Dkt. 1 at ¶ 2).

## LEGAL STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, a party may obtain injunctive relief before final judgment in certain limited circumstances. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits; he is likely to suffer irreparable harm in the absence of preliminary relief; the balance of equities tips in his favor; and an injunction is in the public interest." *Id.* at 20. The movant must carry his burden "*by a clear showing*." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.

"Under the 'serious questions' version of the test, a preliminary injunction is appropriate when a plaintiff demonstrates that 'serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.'" *Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012) (quoting *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir.2011)). "This approach requires that the elements of the preliminary injunction test be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* (brackets and quotations omitted).

"[T]hese principles apply even in the context of an impending execution." *Lopez*, 680 F.3d at 1072. In applying them, the Court considers the facts in the light most favorable to Creech,

unless a fact is "blatantly contradicted by the record[] so that no reasonable jury could believe it." *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (summary judgment context).

## ANALYSIS

**1.      Clemency and Due Process**

Death row inmates have no constitutional right to clemency proceedings. *See Herrera v. Collins*, 506 U.S. 390, 414 (1993).The Supreme Court has held that "pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 276 (1998) (plurality) (quoting *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)). Because commutations are matters within the authority of a state's executive branch, clemency proceedings "are rarely, if ever, appropriate for judicial review." *Id.*; *see also Dumschat*, 452 U.S. at 464 ("A decision whether to commute a long-term sentence generally depends not simply on objective factfinding, but also on purely subjective evaluations and on predictions of future behavior by those entrusted with the decision."). In *Woodard*, the Court addressed the due process rights to which death-row inmates are entitled in a clemency proceeding. *Woodard*, however, is a plurality decision. Chief Justice Rehnquist wrote the primary decision and concluded death-row inmates have no due process rights in a clemency hearing because they received all the process to which they were entitled during trial and sentencing. *Id.* at 281 (plurality).

Justice O'Connor, however, wrote a concurring opinion rejecting the notion that "the Due Process Clause provides no constitutional safeguards" in clemency proceedings. *Id.* at 288. Rather, she concluded "some *minimal* procedural safeguards apply to clemency proceedings." *Id.* at 289. By way of example, she stated that "judicial intervention might . . . be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case

where the State arbitrarily denied a prisoner any access to his clemency process." *Id.* at 289. By contrast, she rejected Woodard's claim that his due process rights were violated because he did not have adequate notice; he did not have a meaningful opportunity to prepare his petition; his counsel was improperly excluded from an interview and the clemency hearing; and he was precluded from testifying or submitting documentary evidence at the hearing. *Id.* at 289-90.

Three other Justices joined in Justice O'Connor's concurrence, and another Justice agreed with her rejection of Chief Justice Rehnquist's conclusion that an inmate has no due process rights in a clemency hearing. *Id.* at 288 (noting Justices Souter, Ginsburg, and Breyer joining); *id.* at 291 (noting Justice Stevens writing separately and rejecting conclusion that no due process rights exist in clemency hearing). Accordingly, Justice O'Connor's concurring opinion concluding some minimal procedural safeguards apply in clemency proceedings is the controlling law. *See Marks v. United States*, 430 U.S. 188, 193 (1977) (noting in fractured opinions "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds") (internal quotation marks omitted); *see also Anderson v. Davis*, 279 F.3d 674, 676 (9th Cir. 2002) (ruling inmate failed to demonstrate substantial likelihood of success on merits in challenging Governor's blanket denial of clemency applications).

A federal appellate court, however, is not authorized "to review the substantive merits of a clemency proceeding." *Workman v. Bell*, 245 F.3d 849, 852 (6th Cir. 2001). The reason for this rule is twofold. First, *Woodard* at most authorizes only limited judicial review for some minimal procedural due process safeguards. 523 U.S. at 289; *see also Anderson*, 279 F.3d at 676 (relying on *Woodard*). Second, generally the record of the clemency hearing is inadequate—as in this case—to conduct a substantive judicial review of the merits. For example, in this case, the parties' written submissions to the Commission are not in the record, and their oral presentations were not

recorded and officially transcribed. Rather, apparently only "minutes" were recorded. (Dkt. 11-1 at pp. 8-21).

In resolving Creech's preliminary injunction motion, the Court relies on Justice O'Connor's decision in *Woodard* and considers whether Creech has clearly shown a substantial likelihood of success of demonstrating Defendants violated his due process rights because they deprived him of minimal due process safeguards. The Court declines, however, to address Creech's allegations regarding the substantive merits of the proceeding, including the validity of the evidence. A review of the merits is beyond this Court's authority.

**2.      Likelihood of Success on the Merits**

Creech fails to clearly show he is likely to succeed on the merits of his due process claim. Due process is a flexible concept, and the determination of what procedural protections are required in any given situation depends on the nature of the proceeding. *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974). For example, the Due Process Clause requires fewer procedural protections for a parole hearing versus a criminal trial. *See Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) ("[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.").

By the same token, a parolee has a right to more procedural due process in a revocation hearing than a clemency petitioner has in a clemency proceeding. *Compare id*. at 488-89 ("[T]he minimum requirements of due process [in a parole revocation proceeding] include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing

body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.") (internal quotation marks omitted), *with Woodard*, 523 U.S. at 289 (O'Connor, J., concurring) (concluding that only "*minimal*" due process protections are required in the clemency context).

In this case, the Court has carefully and thoroughly reviewed the record, considered the procedures for Creech's clemency hearing, and finds the Commission provided Creech more than minimal due process in conducting the hearing. For example, Creech was granted a commutation hearing. He had notice of that hearing. The Commissioner's executive director met several times with the parties about the hearing before it occurred. The director provided the parties with information regarding "the rules and logistical details for the hearing." (Dkt. 1 at ¶¶ 34-38). The Commission required the ACPO to submit materials and provided Creech with copies of those materials before the hearing. (*Id*. ¶ 41). The Commission allowed Creech to present information at the hearing and gave him an opportunity to speak on his behalf. Finally, the Commission deliberated and issued a written decision explaining the commissioners' reasoning.

Creech challenges these procedures by eliding the distinction between the amount and type of due process afforded parolees and inmates seeking parole versus clemency petitioners. He relies on *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) (per curiam), for the proposition that "[a]t a minimum, due process in clemency proceedings requires advance notice and a chance to contest evidence that will be presented against a petitioner." (Dkt. at ¶ 179). *Swarthout* addresses the due process requirement in the context of parole hearing, however. *Swarthout*, 562 U.S. at 216-17. It does not establish that this same due process is required in a clemency hearing. Moreover, the procedures the Commission provided Creech during the clemency hearing likely would have

satisfied the due process requirements even for a parole hearing. *See id.* at 220 (noting prisoner subject to parole statute "received adequate process when he was allowed an opportunity to be heard and was provided a statement of reasons why parole was denied.").

Creech's reliance on *Lankford v. Idaho*, 500 U.S. 110 (1991), and *Wilson v. U.S. Dist. Court*, 161 F.3d 1185 (9th Cir. 1998), to argue that he had a right to notice of the ACPO's intention to refer to Walker's murder and show the sock photograph is also misplaced. *Lankford* is distinguishable because it did not involve a clemency proceeding; rather, in that case the defendant challenged the prosecution's failure to notify him that it intended to seek the death penalty. *Id.* at 500 U.S. at 119. A defendant's due process rights in that context are greater than in a clemency proceeding.

Similarly, *Wilson* is distinguishable, even though it involved a clemency proceeding. In *Wilson*, the governor informed the petitioner that the governor would not consider exculpatory evidence but then denied clemency specifically because the petitioner failed to present exculpatory evidence. *Wilson*, 161 F.3d at 1186-87. Based on this fact, the Ninth Circuit concluded the petitioner had stated "a claim of a violation of due process." *Id.* Contrary to *Wilson*, Creech does not allege the decisionmaker in his case—the Commission—misled him in any respect.

Creech has cited no authority that the ACPO was required to provide him with notice of *all* the information it intended to show or discuss during the clemency hearing. That the Commission permitted the parties to view most of the information before the hearing did not create a protectable interest in a right to receive the ACPO's presentation in its entirety before the hearing. Further, because Creech does not have a constitutional right to a clemency hearing, it necessarily follows he does not have a due process right to post-hearing proceedings including, for example, discovery regarding the clemency proceeding.

Creech also does not cite any authority in support of his assertion that the Commission violated his due process rights by proceeding to the clemency hearing with only six commissioners. Creech does not contend he was surprised by this fact; he was on notice that Idaho law required a majority vote of the Commission for a recommendation of clemency; and he, notably, did not object to the lack of a seventh commissioner.

As Creech acknowledges, "[t]he Commission went to a great deal of trouble and expense to organize a lengthy and complex commutation hearing in a capital case, after months of preparation and logistics involving a large number of people." (Dkt. 15 at p. 8). Based on a review of the procedures the Commission provided Creech, the Court finds Creech fails to show a substantial likelihood of success on the merits of his claim that his due process rights were violated. The record shows Creech received more than the constitutionally required minimum procedural protections.

Finally, although the Court declines to review the merits of Creech's claim, it notes that Creech alleges in his complaint that "the prosecution reveal[ed] a photo of the murder weapon for the first time" at the clemency hearing. (Dkt. 1 at § V(C)). The minutes, however, contradict this allegation. Rather than showing the murder weapon—namely the sock containing batteries—the ACPO apparently showed a photograph of the sock purportedly matching the murder weapon. (Dkt. 11-1 at p. 20 ("[The prosecutor] displayed a photograph of the matching sock that was found in [Creech's] cell.  The name on the sock is 'Creech.'").

Further, although the ACPO did apparently state during the hearing that "Creech was positively identified as [Walker's] murderer" (Dkt. 11-1 at p. 14), the minutes show the ACPO discussed numerous other murders Creech allegedly committed. Creech, however, does not dispute

those murders, and it is already an established fact that Creech has committed multiple murders.

As Justice O'Connor stated:

> The facts underlying this case could not be more chilling. Thomas Creech has admitted to killing or participating in the killing of at least 26 people. The bodies of 11 of his victims—who were shot, stabbed, beaten, or strangled to death—have been recovered in seven States. Creech has said repeatedly that, unless he is completely isolated from humanity, he likely will continue killing. And he has identified by name three people outside prison walls he intends to kill if given the opportunity.

*Arave v. Creech*, 507 U.S. 463, 465-66 (1993). Finally, the Commission's decision does not appear to have been unduly influenced by either the Walker murder or the sock photograph. The Commission did not mention either when explaining its decision.

**3.      Irreparable Harm**

The Commission argues Creech will not suffer irreparable injury if denied injunctive relief, citing *Powell v. Thomas*, 784 F. Supp. 2d 1070 (M.D. Ala. 2011). In that case, the court ruled the petitioner failed to show irreparable harm because he failed to establish a substantial likelihood of success on the merits of his claim. *Id.* at 1283. *Powell*, however, is contrary to Ninth Circuit law. The Ninth Circuit has recognized that "every § 1983 plaintiff in an injunction appeal involving an upcoming execution" demonstrates irreparable harm. *Towery*, 672 F.3d at 661. Moreover, this Court has previously rejected the argument that irreparable harm requires something more than the plaintiff's death and the inability to continue litigation. *Rhoades v. Reinke*, 830 F. Supp. 2d 1046, 1070-71 (D. Idaho) ("[T]he harm in this instance is Rhoades's death [from execution] and his inability to continue with the litigation, and . . . this harm is irreparable if a stay is not granted."), *aff'd*, 671 F.3d 856 (9th Cir. 2011). Accordingly, the Court concludes Creech has made a clear showing he will likely suffer irreparable harm in the absence of preliminary relief if IDOC proceeds with the execution.

**4.     Balance of Equities and Public Interest**

As noted above, "[u]nder the 'serious questions' version of the test, a preliminary injunction is appropriate when a plaintiff demonstrates that 'serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.'" *Id.* at 657. Creech, however, has failed to demonstrate "serious questions going to the merits" because he fails to clearly show a likelihood of success on the merits of his claim. Moreover, the balance of equities and public interest do not weigh sharply in Creech's favor.

The Supreme Court has stated a State has a "strong interest in enforcing its criminal judgments without undue interference from federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Likewise, crime victims "have an important interest in the timely enforcement of a sentence." *Id.* These interests are especially strong in cases in which the legal proceedings have continued for many years. *Bible v. Schriro*, 651 F.3d 1060, 1066 (9th Cir.2011) ("[T]he further delay from a stay [of execution] would cause hardship and prejudice to the State and victims, given that the appellate process in this case has already spanned more than two decades."). Further, the Supreme Court has held a State has a compelling interest in finality and is entitled to the assurance of finality after years of lengthy proceedings have run their course and once a mandate has issued denying habeas relief. *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). "Only with real finality can the victims of crime move forward . . . ." *Id.* "To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty." *Id.* (quotation omitted).

The history of Creech's federal proceedings is too long and complicated to recount here. In brief, Creech has sought relief from his death sentence in the federal courts since the reimposition of his death penalty in 1995—almost thirty years of litigation. Recently, the Supreme

Court denied Creech's petition for certiorari challenging the Ninth Circuit's denial of his second amended habeas petition. *Creech v. Richardson*, 59 F.4th 372 (9th Cir. 2023) *cert. denied* 114 S. Ct. 291 (Oct. 10, 2023). A few days later, on October 13, 2023, Creech filed his third federal habeas petition alleging that evolving standards of decency render his death sentence unconstitutional. *Creech v. Richardson*, No. 1:23-cv-00463-AKB. This Court concluded it lacked jurisdiction over Creech's unauthorized successive petition under 28 U.S.C. § 2244(b), and that decision is now on emergency appeal. *Creech*, No. 1:23-cv-00463-AKB at Dkts. 15, 17.

A few days after Creech filed his third federal habeas petition, the Ninth Circuit issued the mandate on its decision remanding another of Creech's civil rights cases to this Court, in which Creech has attempted under § 1983 to challenge the State's execution protocol since March 2020. *See Creech v. Tewalt*, 84 F.4th 777, 783 (9th Cir. 2023). Although the Court allowed Creech to amend his complaint—for a third time—to attempt to allege viable claims, his less than clear showing in support of his preliminary injunction motion demonstrates he is unlikely to succeed on the merits of any of his claims. Finally, Creech filed this action on February 5, 2024, challenging the Commission's denial of his clemency petition. This litigation history demonstrates an instance in which the State's and the victims' interests in finality are especially strong given the lengthy legal proceedings that have delayed the State's timely enforcement of Creech's sentence. Accordingly, the Court concludes the balance of equities and public interest are not in Creech's favor.

Because Creech fails to make a clear showing of a likelihood of success on the merits of claim that the Commission and ACPO violated his due process rights and because the balance of equities and the public interest weigh against granting a preliminary injunction, the Court denies Creech's request for an injunction, even though he will suffer irreparable harm as a result.

5.      **Evidentiary Hearing**

The Court disagrees it must hold an evidentiary hearing before denying Creech's request for injunctive relief, as Creech asserts. The Ninth Circuit has ruled that a court does not need to have a hearing on a motion for a preliminary injunction where the essential facts are not in dispute. *Charlton v. Est. of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988). Further, a hearing is unnecessary when "the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3rd Cir. 1990). The Court finds that in this case, Creech has failed to present a colorable factual basis to support his claim that the clemency hearing violated his due process rights.

Further, the Court declines to grant Creech's Motion to Expedite Discovery. As stated above, Creech has no constitutional right to a clemency hearing; he likewise has no constitutional right to conduct discovery to challenge that hearing. The Court concludes Creech has failed to show good cause to conduct discovery.

## ORDER

**IT IS ORDERED:**

1.      Plaintiff's Motion for Preliminary Injunction (Dkt. 4) is **DENIED**.

2.      Plaintiff's Motion to Expedite Discovery (Dkt. 10) is **DENIED**.

3.      Plaintiff's Motion for Leave to Submit Notice of Factual Development (Dkt. 17) is **GRANTED**.

DATED: February 23, 2024

Amanda K. Brailsford
U.S. District Court Judge