**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| THOMAS EUGENE CREECH, *Plaintiff - Appellant*, v. IDAHO COMMISSION OF PARDONS AND PAROLE and JAN M BENNETTS, Ada County Prosecuting Attorney, in her official capacity, *Defendants - Appellees*. | No. 24-1000 D.C. No. 1:24-cv-00066-AKB OPINION |

Appeal from the United States District Court
for the District of Idaho
Amanda K. Brailsford, District Judge, Presiding

Argued and Submitted February 24, 2024
San Francisco, California

Filed February 24, 2024

Before: William A. Fletcher, Jay S. Bybee, and Morgan Christen, Circuit Judges.

# SUMMARY[*]

### Death Penalty/Commutation Proceedings

The panel affirmed the district court's denial of Idaho death row inmate Thomas Eugene Creech's motion for a preliminary injunction alleging due process violations during his commutation proceedings.

In 1981, while serving two life sentences for murders committed in Idaho and following convictions for additional murders committed in California and Oregon, Creech killed fellow inmate David Dale Jensen. On October 16, 2023, an Idaho state court issued a death warrant for Creech's execution, but the warrant was stayed pending Creech's petition for commutation to life without parole.

The Commission of Pardons and Parole denied Creech's commutation petition in a 3-3 vote, with one commissioner recused. Creech filed an action under 42 U.S.C. § 1983, alleging various due process violations by the Commission and the Ada County Prosecuting Attorney's Office ("ACPA").

The panel rejected all of Creech's due process arguments. First, neither this Circuit nor the Supreme Court has interpreted the Due Process Clause to require advance notice of the evidence to be presented at a commutation hearing, and Idaho law does not confer a right to receive such notice. Creech received notice of the hearing itself and was

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

not misled as to the issues that would be considered by the Commission.

The panel rejected Creech's contention that the Due Process Clause entitled him to the appointment of a replacement commissioner when one Commissioner recused himself. Idaho law does not expressly authorize the appointment of a replacement commissioner in the event of a recusal.

The panel rejected Creech's argument that ACPA violated his due process rights by suggesting to the Commission that Creech "committed the murder [of Daniel Walker] and got away with it." The panel held that the prosecutor's statements at the hearing did not mislead the Commission into assuming that Creech had been found responsible in a formal legal sense. Moreover, the panel was persuaded that correcting any purported violation would not change the Commission's vote to deny Creech commutation. Even if the Commission had not been presented with any information regarding the status of the Walker investigation, it would still have ample evidence that Creech had killed many people, been implicated or suspected in other deaths, and been dishonest about his involvement in the death of Dwayne DiCicco.

The panel further rejected Creech's argument that ACPA violated his due process rights by introducing misleading or fabricated evidence relating to the issue of whether Creech killed Jensen in self-defense. The panel held that any alleged due process violation was harmless beyond a reasonable doubt. The Commissioners who voted to deny commutation focused on the reprehensible nature of Jensen's murder without reference to whether Creech had provoked Jensen's initial attack. The Commissioners were also concerned with

both Creech's lack of candor about the number of people he had murdered and justice for Jensen's family. Overwhelming evidence supported those reasons. Moreover, the Commissioners were unanimous that Creech's conduct—including any evidence of his post-offense rehabilitation—would not entitle him to mercy.

The panel concluded that Creech has failed to establish a likelihood of success on the merits, and found no legal or clear factual error in the district court's evaluation of the remaining preliminary injunction factors.

## COUNSEL

Jonah Horwitz (argued), Assistant Federal Public Defender, Capital Habeas Unit; Mary E. Spears and Christopher M. Sanchez, Assistant Federal Public Defenders; Deborah A. Czuba, Federal Public Defender; Federal Defender Services of Idaho, Boise, Idaho; for Plaintiff-Appellant.

Kristina M. Schindele (argued), Acting Assistant Attorney General; Mary K. Magnelli, Lead Deputy Attorney General; Idaho Attorney General's Office, Boise, Idaho; for Defendant-Appellee Idaho Commission of Pardons and Parole.

Dayton P. Reed (argued), Assistant Attorney General; Sherry A. Morgan, Senior Deputy Prosecuting Attorney; Ada County Prosecutor's Office, Boise, Idaho; for Defendant-Appellee Jan M. Bennetts.

# OPINION

PER CURIAM:

Plaintiff-Appellant Thomas Eugene Creech is on death row for the 1981 murder of David Dale Jensen. In 2023, the State of Idaho granted Creech a commutation hearing before the Commission of Pardons and Parole (the "Commission"), which was held in early 2024. The Commission ultimately denied the petition for commutation, and Creech's execution is now scheduled for February 28, 2024. Creech filed a § 1983 action in federal court, alleging various due process violations over the course of the commutation proceedings and seeking a preliminary injunction. The district court denied his motion, and we affirm.

## I. BACKGROUND

Because we have described elsewhere the factual and procedural history of this case, *see Creech v. Richardson*, 59 F.4th 372, 376–82 (9th Cir. 2023), we recite only those facts most relevant to Creech's commutation-related arguments now before us. In 1981, while serving two life sentences for murders committed in Idaho, and following convictions for additional murders committed in California and Oregon, Creech killed fellow inmate David Dale Jensen, who was disabled. *See id.* at 376–77; *Arave v. Creech* ("*Creech IV*"), 507 U.S. 463, 466 (1993). In relevant part, Jensen attacked Creech with a battery-filled sock. *State v. Creech* ("*Creech V*"), 966 P.2d 1, 5 (Idaho 1998). Creech took the weapon from Jensen. Jensen later returned, wielding a toothbrush with a razor blade fastened to it. Creech beat Jensen with the sock, ultimately killing him. *Id.* Creech pleaded guilty. At his initial sentencing in 1982, Creech

testified that, "through an intermediary, [he] provided Jensen with makeshift weapons and then arranged for Jensen to attack him, in order to create an excuse for the killing." *Creech IV*, 507 U.S. at 466. Although the judge at Creech's original sentencing concluded that "Creech did not instigate the fight with the victim," *id.* at 467, the same judge later determined at a resentencing in 1995 that the murder was "planned and executed by Creech," *Creech V*, 966 P.2d at 7. On October 16, 2023, an Idaho state court issued a death warrant for Creech's execution, but the warrant was stayed pending Creech's petition for commutation to life without parole.

The Idaho Commission of Pardons and Parole possesses the exclusive power to grant commutations and pardons, but "only as provided by statute . . . ." Idaho Const. art. IV, § 7. The Commission is comprised of seven Commissioners. *See* Idaho Code § 20-1002(1). Except in certain cases not relevant here, "[a]ny decision of the full Commission requires a majority vote of four (4) Commissioners." IDAPA § 50.01.01.200.08.a. Idaho law further requires recusal in certain cases, *see id.* § 50.01.01.200.07, but it does not supply a tie-breaking method or mechanisms for the appointment of an interim Commissioner in the event of a recusal.

In the case of capital offenses, the Commission may issue a pardon or commutation "only after first presenting a recommendation to the governor." Idaho Code § 20-1016(2). If the Governor approves the recommendation within thirty days, "the commission's pardon or commutation shall issue." *Id.* If the Governor rejects the recommendation or fails to act upon it within thirty days, "no pardon or commutation shall issue from the commission, and

the commission's recommendation shall be of no force or effect." *Id.*

The Commission ultimately denied Creech's commutation petition in a 3-3 vote, with one commissioner recused. Creech filed an action under 42 U.S.C. § 1983, alleging various violations of due process by the Commission and the Ada County Prosecuting Attorney's Office ("ACPA"). The district court denied Creech's motion for a preliminary injunction. Creech timely appealed.

II. JURISDICTION AND STANDARD OF REVIEW

We have appellate jurisdiction to review the denial of a preliminary injunction under 28 U.S.C. § 1292(a)(1). We review the denial of a preliminary injunction for abuse of discretion, but we review de novo the underlying issues of law. *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 475 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1749 (2023).

"The appropriate legal standard to analyze a preliminary injunction motion requires a district court to determine whether a movant has established that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). We focus here on the "likelihood of success" element, which is the most important factor. *See Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019).

III. ANALYSIS

Our review of state commutation proceedings is limited. *See Wilson v. U.S. Dist. Ct. for N. Dist. of Cal.*, 161 F.3d 1185, 1186 (9th Cir. 1998). "[P]risoners have no liberty interest in clemency proceedings because the decision to grant or deny clemency rests wholly in the discretion of the executive." *Burnsworth v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999). If a state provides a commutation proceeding, the Due Process Clause of the Fourteenth Amendment requires only "*minimal* procedural safeguards . . . ." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 289 (1998) (O'Connor, J., concurring in part and concurring in the judgment);[1] *see also id.* at 292 (Stevens, J., concurring in part and dissenting in part) ("There are valid reasons for concluding that even if due process is required in clemency proceedings, only the most basic elements of fair procedure are required."); *Woratzeck v. Ariz. Bd. of Exec. Clemency*, 117 F.3d 400, 404 (9th Cir. 1997) ("[T]he due process that the Constitution requires for a clemency hearing is quite limited.").

The precise contours of our review of a commutation proceeding are unclear. At the least, a procedural due process violation exists if "the clemency proceeding's outcome is wholly arbitrary . . . ." *Schad v. Brewer*, 732 F.3d 946, 947 (9th Cir. 2013) (per curiam). "Judicial intervention might, for example, be warranted in the face of a scheme

---

[1] Justice O'Connor's concurring opinion, joined by a plurality of justices, constitutes the Court's holding in light of Justice Stevens' partial concurrence. *See Marks v. United States*, 430 U.S. 188, 193 (1977); *see also*, *e.g.*, *Barwick v. Governor of Fla.*, 66 F.4th 896, 902 (11th Cir.) (per curiam) ("Justice O'Connor's concurring opinion provides the holding in *Woodard*."), *cert. denied sub nom. Barwick v. Desantis*, 143 S. Ct. 2452 (2023).

whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Woodard*, 523 U.S. at 289 (O'Connor, J., concurring in part and concurring in the judgment). We have assumed without deciding that "bribery, personal or political animosity, or the deliberate fabrication of false evidence" may give rise to a commutation-related due process claim. *Anderson v. Davis*, 279 F.3d 674, 676 (9th Cir. 2002) (citation omitted). In the absence of such arbitrariness or invidious misconduct, "notice of the hearing," *Woodard*, 523 U.S. at 290 (O'Connor, J., concurring in part and concurring in the judgment), "notice of the issues to be considered," *Wilson*, 161 F.3d at 1187, and "an opportunity to participate in a[] [pre-hearing] interview," *Woodard*, 523 U.S. at 290 (O'Connor, J., concurring in part and concurring in the judgment), generally satisfy the demands of the Due Process Clause.

Further, even if we found an irregularity, there is some uncertainty as to the proper harmlessness standard to apply in review of state commutation proceedings. *Cf. Washington v. Recuenco*, 548 U.S. 212, 218 (2006) (noting the general presumption that harmless-error analysis applies to constitutional violations). But we will afford Creech the benefit of *Chapman v. California*'s generous standard, and we therefore assume without deciding that the State bears the burden of demonstrating that any error is "harmless beyond a reasonable doubt." 386 U.S. 18, 24 (1967).

Applying these standards, we reject all of Creech's due process arguments.

1. We first consider Creech's argument that he was not given adequate notice of the issues to be considered by the

Case: 24-1000, 02/29/2024, DktEntry: 22.1, Page 10 of 16
Case 1:24-cv-00066-AKB   Document 27   Filed 02/29/24   Page 10 of 16

10                        CREECH V. BENNETTS

Commission and the evidence to be presented at the commutation hearing. Neither we nor the Supreme Court have read the Due Process Clause to require advance notice of the evidence to be presented at a commutation hearing, and Idaho law does not confer a right to receive such notice. Creech received notice of the hearing itself. *See Woodard*, 523 U.S. at 290 (O'Connor, J., concurring in part and concurring in the judgment). And Creech was not misled as to the issues that would be considered by the Commission. *See Wilson*, 161 F.3d at 1187. The State gave Creech considerable information about the logistics and substance of his hearing well in advance thereof. The Commission's Executive Director met with Creech's counsel three times before the hearing to discuss the agenda and types of evidence that would be presented. More than three weeks before the hearing, Creech received from the State a copy of the investigation packet that the Commission would be reviewing. Although Creech may not have known all of the specific evidence that would be presented during his commutation hearing—such as evidence concerning the Daniel Walker murder and the introduction of a picture of a sock labeled "Creech," which are discussed below—the State satisfied the minimal notice requirements contemplated in *Woodard* and *Wilson*.

2. We next reject Creech's contention that the Due Process Clause entitled him to the appointment of a replacement commissioner when one Commissioner recused himself. Idaho law does not expressly authorize the appointment of a replacement commissioner in the event of a recusal. This is far from "wholly arbitrary," *Schad*, 732 F.3d at 947, and Creech has received more than the minimum process he was due under the U.S. Constitution, *see Woodard*, 523 U.S. at 290 (O'Connor, J., concurring in part

Case: 24-1000, 02/29/2024, DktEntry: 22.1, Page 11 of 16
Case 1:24-cv-00066-AKB Document 27 Filed 02/29/24 Page 11 of 16

CREECH V. BENNETTS 11

and concurring in the judgment), so he has failed to make a cognizable procedural due process claim. And we decline to speculate that the presence of an additional commissioner would have changed the outcome. *Cf. Brown v. Davenport*, 596 U.S. 118, 133 (2022) (explaining that "set[ting] aside a conviction based on nothing more than speculation that the defendant was prejudiced . . . would be to give short shrift to the State's sovereign interes[t] in its final judgment" (citation and quotation marks omitted) (final alteration in original)).

3. We disagree that ACPA violated Creech's due process rights by suggesting to the Commission that Creech "committed the murder [of Daniel Walker] and got away with it." Although we will not review the substantive merits of the Commission's commutation proceeding, we will assume that we may review Creech's claim that fabricated evidence was deliberately introduced by ACPA. *See Anderson*, 279 F.3d at 676. The prosecutor's statements that Creech had been identified as Walker's killer are not entirely consistent with the San Bernardino Sheriff's Office press release about the Walker investigation released on January 24, 2024, shortly after the commutation proceeding. It appears[2] that the prosecutor told the Commission that Creech had been "positively identified as the murderer," although the press release identified Creech as only a "suspect." The press release also stated, however, that "[d]etectives were able to corroborate intimate details from statements Creech made regarding Daniel's murder."

ACPA's slide does unequivocally state that "Thomas Creech Murdered Daniel Walker." Taken alone, that slide

---

[2] Because there is no transcript or recording of the hearing, we rely primarily on the meeting minutes attached as an exhibit to the parties' filings.

Case: 24-1000, 02/29/2024, DktEntry: 22.1, Page 12 of 16
Case 1:24-cv-00066-AKB Document 27 Filed 02/29/24 Page 12 of 16

12  CREECH V. BENNETTS

might have been misleading by overstating the level of certainty as to Creech's involvement. But it appears from the hearing minutes that the prosecutor correctly noted that Creech had not been tried for, nor convicted of, Walker's murder, so the prosecutor's statements did not mislead the Commission into assuming that Creech had been found responsible in a formal, legal sense.

We are also persuaded that correcting any purported violation would not change the Commission's vote to deny Creech commutation. Creech's alleged violations do not call into doubt the stated rationales for the Commissioners' votes. The Commissioners who voted to deny commutation reasoned that Creech is not "worthy of grace or mercy" for several reasons, including "the coldblooded nature of David Dale Jensen's murder," as well as Creech's "unwilling[ness] to completely disclose the number of people he has killed." The Commissioners further opined "that the Jensen family would not receive justice if Mr. Creech received clemency, and above all else that they deserve closure in this case." Overwhelming evidence supports those conclusions.

It is true that the Commissioners who voted against commutation noted "the sheer number of victims that Mr. Creech has created over his lifetime" and that "Mr. Creech was not interested in telling the truth about his additional crimes." But even taking Daniel Walker's murder out of the equation would not materially change the record's support for both of those observations. The prosecutor alleged at the hearing that Creech had killed eleven people, including Walker. Creech agreed that he had killed at least nine people, but he claimed that he had never heard of one of the names and did not kill Dwayne DiCicco. The Commission then asked if Creech could settle "on at least ten people[] that he killed," to which Creech replied, "no."

Case: 24-1000, 02/29/2024, DktEntry: 22.1, Page 13 of 16
Case 1:24-cv-00066-AKB Document 27 Filed 02/29/24 Page 13 of 16

CREECH V. BENNETTS 13

*Contra Creech IV*, 507 U.S. at 465 ("Creech has admitted to killing or participating in the killing of at least 26 people. The bodies of 11 of his victims—who were shot, stabbed, beaten, or strangled to death—have been recovered in seven States.").

Even if the Commission had not been presented with any information regarding the status of the Walker investigation, it would have still had ample evidence that Creech had killed many people, been implicated or suspected in other deaths, and been dishonest about his involvement in the death of DiCicco. Creech had previously confessed to killing DiCicco, even going so far as to contact DiCicco's mother several times.

4. We also reject Creech's argument that ACPA violated his due process rights by introducing misleading or fabricated evidence when it displayed a slide of a sock labeled with Creech's name. In 1995, the sentencing judge found "beyond a reasonable doubt . . . . [that] [a]ll the weapons which were used in this murder were made by Tom Creech. Jensen was egged on to attack Creech so the justification of self defense could be used. . . . Jensen approached Creech holding a weapon made up of batteries in a sock. *The sock was later determined to be Creech's*." Findings of the Court in Considering the Death Penalty Under Section 19-2515, Idaho Code, at 3–4, *State v. Creech*, No. HCR-10252 (Idaho Dist. Ct. Apr. 17, 1995) (emphasis added).[3] The question of the authenticity of the sock in the photograph and its probative value arose because Creech contended at the Commission's hearing that his remorse and

---

[3] The state trial court's findings are available as an exhibit at Second Petition for Writ of Habeas Corpus, *Creech v. Pasket*, No. 99-CV-00224 (D. Idaho Mar. 24, 2005), ECF No. 131-1.

Case: 24-1000, 02/29/2024, DktEntry: 22.1, Page 14 of 16
Case 1:24-cv-00066-AKB    Document 27    Filed 02/29/24    Page 14 of 16

14                    CREECH V. BENNETTS

rehabilitation favored commutation. In support, he claimed that he had accepted responsibility for his offenses. ACPA responded by pointing to a pre-hearing statement that Creech gave to investigators, where Creech contradicted the sentencing judge's 1995 factual finding that the murder weapon was his by stating that it belonged to another inmate. ACPA introduced the slide with the labeled sock to refute Creech's pre-hearing assertion that the murder weapon never belonged to him. In a post-hearing declaration provided to the Commission, Creech's attorney stated that the prosecutor falsely told the Commission during the hearing that the sock bearing Creech's name was the murder weapon. The detailed notes of the hearing describe no such statement by the prosecutor. The minutes state, instead, that in her closing argument to the Commission, the prosecutor "displayed a photograph of the matching sock that was found in Mr. Creech's cell. The name on the sock is 'Creech.'" Creech did not address at the hearing the sentencing judge's 1995 factual finding that the murder weapon was his.

Even if we credit Creech's attorney's post-hearing declaration that the prosecutor falsely told the Commission that the sock bearing Creech's name was the murder weapon, there are other reasons why any such due process violation was harmless beyond a reasonable doubt. The Commissioners who voted to deny commutation did not mention the sock, nor did they even discuss Creech's unwillingness to accept the 1995 factual findings that the murder weapon belonged to him. As explained above, the Commissioners who voted to deny commutation focused on the reprehensible nature of Jensen's murder without reference to whether Creech had provoked Jensen's initial attack. The Commissioners were also concerned with both Creech's lack of candor about the number of people he had

Case: 24-1000, 02/29/2024, DktEntry: 22.1, Page 15 of 16
Case 1:24-cv-00066-AKB Document 27 Filed 02/29/24 Page 15 of 16

CREECH V. BENNETTS　　　　　　　15

murdered and justice for Jensen's family. Overwhelming evidence supports those reasons.

Bolstering our conclusion as to harmlessness, the Commissioners were unanimous that Creech's conduct—including any evidence of his post-offense rehabilitation—would not entitle him to mercy. The three Commissioners who voted to recommend commutation were explicit that their "decision was not based on any doubt or question about Mr. Creech's guilt or the horrific nature of his crime." Indeed, their reasoning was not "based on the actions and conduct of Mr. Creech" at all. Instead, their vote reflected "the time that had elapsed since Mr. Creech committed this horrific crime," and that the sentencing judge and former Ada County deputy prosecutor "no longer believe that a sentence of death is appropriate . . . ." It strains credulity to suppose that the reference to the matching sock made the difference in the Commission's denial of commutation.

5. Finally, we disagree with Creech's argument that the Commission violated his due process rights when it failed to pause the proceedings after the hearing based on his complaints of unfairness. Creech raised both the Walker and sock issues to the Commission after the hearing. The Commissioners unanimously rejected Creech's request to defer proceedings pending further factfinding, suggesting that the Commissioners did not consider either issue relevant to the denial of commutation. The Commission had no obligation to consider Creech's request (which it did), let alone grant it.

## IV. CONCLUSION

Creech has failed to establish a likelihood of success on the merits, and we find no legal or clear factual error in the district court's evaluation of the remaining preliminary

Case: 24-1000, 02/29/2024, DktEntry: 22.1, Page 16 of 16
Case 1:24-cv-00066-AKB Document 27 Filed 02/29/24 Page 16 of 16

16 CREECH V. BENNETTS

injunction factors. *See Cal. Chamber of Com.*, 29 F.4th at 475. We dismiss as moot Creech's motion for a stay pending appeal.

**AFFIRMED.**