Nicole Owens
EXECUTIVE DIRECTOR
Christopher M. Sanchez, Idaho Bar No. 12070
Jonah J. Horwitz, Idaho Bar No. 10494
Assistant Federal Defenders
FEDERAL DEFENDER SERVICES OF IDAHO
702 W. Idaho Street, Suite 900, Boise, ID 83702-8929
Telephone: (208) 331-5530; Facsimile: (208) 331-5559
ECF:   Jonah_Horwitz@fd.org
        Christopher_M_Sanchez@fd.org

*Attorneys for Plaintiff Thomas Eugene Creech*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| **THOMAS EUGENE CREECH,** | ) | **CASE NO. 1:24-CV-066-AKB** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **AMENDED COMPLAINT** |
| | ) | |
| **IDAHO COMMISSION OF PARDONS** | ) | |
| **AND PAROLE**; **JAN M. BENNETTS**, | ) | |
| Ada County Prosecuting Attorney, in her | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

### I.    Nature of the Action

1.     Plaintiff Thomas Eugene Creech is a death-row inmate in Idaho who

brings this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional

right to due process of law in his clemency proceeding because the prosecution[1]

_____

[1] Mr. Creech will refer to the prosecution as "Idaho," "the State of Idaho," "the State," the "prosecutor," and so forth. The use of these expressions does not limit the scope of the claims, which are brought against both named defendants.

AMENDED COMPLAINT – Page 1

presented false evidence without notice at the commutation hearing before the Idaho Commission of Pardons and Parole (hereinafter "the Commission").

2.      This amended complaint is filed as of right without need to seek leave.

**II.   Justiciable Case or Controversy**

3.      Mr. Creech is seeking remedies for the constitutional violations committed by the defendants.

4.      There is a real and justiciable case or controversy between the parties.

**III.   Jurisdiction and Venue**

5.      This action arises under 42 U.S.C. § 1983.

6.      The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights violations), 2201(a) (declaratory relief), and 2202 (further relief).

7.      The Court has personal jurisdiction over the defendants as they are residents of the State of Idaho and are presently located in the State of Idaho, or are elected or appointed officials of the State of Idaho or otherwise acting on behalf of the State of Idaho.

8.      Venue in this Court is proper under 28 U.S.C. § 1391 because most of the events giving rise to the claims—including the clemency proceedings and Mr. Creech's impending execution—have occurred, are occurring, or will occur in the District of Idaho.

9.      Venue is further proper because, upon information and belief, the defendants all reside in the District of Idaho.

AMENDED COMPLAINT – Page 2

IV.     **Parties**

10.     Mr. Creech is a person within the jurisdiction of the State of Idaho.

11.     Mr. Creech is an inmate under the supervision of the Idaho Department of Correction ("IDOC").

12.     Mr. Creech is confined at the Idaho Maximum Security Institution ("IMSI").

13.     Mr. Creech is under sentence of death.

14.     As set forth in greater detail below, the defendants are state officials responsible for overseeing Mr. Creech's clemency proceeding and/or prosecuting and representing the interests of the State in executing Mr. Creech in Idaho.

15.     The Commission is the agency responsible for making the initial determination with respect to petitions for commutation by death-row inmates.

16.     The Commission was responsible for deciding what information to consider in Mr. Creech's commutation proceedings, notifying the parties of the nature of that information, and providing the parties with an opportunity to respond to that information.

17.     Defendant Jan M. Bennetts is the elected Ada County Prosecuting Attorney.

18.     As such, Ms. Bennetts is the head of the Ada County Prosecutor's Office ("ACPO").

19.     The ACPO was given the primary responsibility in advocating against Mr. Creech at the commutation proceedings.

AMENDED COMPLAINT – Page 3

20.     Upon information and belief, the plaintiff and the defendants are all United States citizens.

21.     The defendants are all officials or representatives of the State of Idaho.

22.     All of the actions that have been and will be taken by the defendants towards executing Mr. Creech and any other actions at issue in this complaint were or will be taken under color of state law.

23.     The defendants are all sued in their official capacities.

**V.     General Factual Allegations**

24.     Mr. Creech incorporates each and every statement and allegation set forth throughout this complaint as if fully rewritten.

25.     Mr. Creech was convicted of first-degree murder for the killing of David Jensen and sentenced to death for that offense in Ada County District Court.

26.     Mr. Creech's murder conviction and death sentence were upheld on direct appeal in 1983.

27.     After Mr. Creech obtained federal habeas relief, he was resentenced to death.

28.     The new death sentence was upheld on direct appeal in 1998.

29.     Mr. Creech brings this action because the prosecutors presented false evidence at his commutation hearing and he was deprived of any meaningful ability to contest it before his commutation petition was denied.

A.     **Clemency Proceedings and the Failure to Notify Mr. Creech of False Evidence the Commission Would Consider and the Prosecution Would Raise**

30.     The State obtained a warrant on October 12, 2023, setting Mr. Creech's execution for November 8, 2023.

31.     Mr. Creech filed his petition for commutation with the Commission the next day, on October 13, 2023, asking for his death sentence to be reduced to life in prison without the possibility of parole.

32.      On October 18, 2023, the Commission voted in favor of granting Mr. Creech a commutation hearing.

33.     The Commission scheduled the commutation hearing for January 19, 2024.

34.     The parties met with the Commission's Executive Director Ashley Dowell on November 7, 2023, to discuss the hearing.

35.     Director Dowell sent a letter to the parties on November 13, 2023, to memorialize the November 7 meeting.

36.     This letter outlined the rules and logistical details for the hearing and noted that the ACPO, rather than the Attorney General's Office, would be the "primary point of contact for the State's case."

37.     The Commission told Mr. Creech's counsel they were not allowed to record the commutation hearing.

38.     The Commission told the parties that neither side could object to anything that was said at the commutation hearing.

AMENDED COMPLAINT – Page 5

39.     The Commission's investigators interviewed Mr. Creech on November 8, 2023.

40.     The Commission's investigators filed a report with the Commission on December 19, 2023.

41.     After the parties had submitted materials for the Commission's consideration, the Commission made all materials provided by the State, Mr. Creech, and the Commission's investigators available to both sides in a "hearing packet" on December 20, 2023.

42.     The State's section of the hearing packet consisted of 2,952 pages of documents.

43.     The first 27 pages of the State's materials, however, were removed from the copy given to counsel for Mr. Creech with the following text: "THIS PAGE REMOVED DUE TO EXTRACTION OF VICTIM RELATED DOCUMENTS."

44.     Counsel for Mr. Creech have never seen these first 27 pages.

45.     When Mr. Creech refers to the packet here, he is referencing the pages that were made available to him.

46.     Among all the State's 2,952 pages that were provided to Mr. Creech, there was no reference to Daniel Walker ("Mr. Walker").

47.     Mr. Walker's name was also absent from the report prepared by the Commission's investigators.

48.     The hearing packet included Mr. Creech's 1994 presentence investigation report.

AMENDED COMPLAINT – Page 6

49. Mr. Walker's name is not in Mr. Creech's 1994 presentence investigation report.

50. Additionally absent from the State's materials were any photographs of socks.

51. To undersigned counsel's knowledge, the State did not supplement any of its materials between December 20, 2023, and the day of the hearing on January 19, 2024.

**B. The Prosecution Falsely Told the Commission Mr. Walker's Murder Had Been Solved and the Killer was Mr. Creech.**

52. At the commutation hearing on January 19, 2024, the ACPO took the position that the Commission should not commute Mr. Creech's death sentence.

53. To support its position that Mr. Creech should be executed, the prosecution told the Commission that just a week before the hearing, authorities in San Bernardino, California had solved Daniel Walker's murder and that Mr. Creech was responsible for it.

54. The prosecutor noted as well that Mr. Creech had always been a suspect in the case.

55. The prosecutor added that the San Bernardino District Attorney ("SBDA") wouldn't charge Mr. Creech with the Walker murder and that, as a result, he would get away with it if granted a commutation.

56. Undersigned counsel are attorneys with the Capital Habeas Unit for Federal Defender Services of Idaho ("CHU").

AMENDED COMPLAINT – Page 7

57.     The CHU has represented Mr. Creech since 1999 and has had primary responsibility over the last twenty-five years for handling his federal habeas and state post-conviction litigation.

58.     In connection with its representation, the CHU has maintained an exhaustive file on every document it has obtained from Mr. Creech's prior attorneys as well as from public record requests, court filings, and so forth.

59.     The CHU's file did not contain any reference to Mr. Walker by name until the commutation hearing occurred.

60.     To undersigned counsel's knowledge, until the commutation hearing, no prosecutor from the ACPO had ever suggested publicly that Mr. Creech was involved in the murder of Mr. Walker.

61.     To undersigned counsel's knowledge, until the commutation hearing, no prosecutor from the ACPO had ever suggested to Mr. Creech's attorneys that he was involved in the Walker murder.

62.     No charges have ever been filed against Mr. Creech in connection with the Walker case.

63.     At the commutation hearing, the ACPO told the Commission that Mr. Creech was guilty of the 1974 Walker murder.

64.     At the commutation hearing, the ACPO told the Commission that the Walker murder case was closed a week before the hearing.

65.    On information and belief, the prosecutor's slides included an image of the book Doug Walker wrote about the murder case, which is described below, and the slides also included the date of his brother's death.

66.    One of the slides the prosecutor showed regarding the Walker case was:

67.



68.     The ACPO further indicated that the Commission should consider this new information in support of a decision to deny Mr. Creech's clemency petition.

69.     The same day as the commutation hearing, the ACPO issued a press release, which included the following statement: "Earlier this week, a cold case was solved in San Bernardino, California when after law enforcement's thorough investigation, they determined Mr. Creech had murdered Daniel A. Walker in October 1974."

70.     The press release was untrue.

71.     The prosecutor's statement to the Commission about the Walker case was untrue.

72.     In fact, the case was not "solved."

73.     When the San Bernardino Sheriff's Department ("SBSD") issued a press release on January 24, 2024, it announced that Mr. Creech had been "identified as the *suspect* in the 1974 murder of Daniel Walker along Interstate 40."

74.     The SBSD release elaborated that its Cold Case Team "resumed the investigation" into the murder on November 15, 2023.

75.      It was, the release went on, only after "working with the Ada County District Attorney's Office [sic] in Idaho, [that] Cold Case Detectives were able to corroborate intimate details from statements Creech made regarding Daniel's murder."

AMENDED COMPLAINT – Page 10

76.     To undersigned counsel's knowledge, there has been no public explanation as to what these intimate details were, when they were made, and what changed in SBSD's investigation from the mid-1970s to the present.

77.     What is clear from the SBSD release is that the case has not been conclusively solved.

78.     Mr. Creech was named only as a "suspect," and the SBSD release ended by requesting that people contact the Cold Case Team if they have any additional information.

79.     The SBSD's release suggests the case remains open.

80.     As of today's date, the SBSD had not removed the Walker case from the published list of homicide cold cases on its website.

81.     The ACPO presented false evidence when it stated to the Commission that the Walker case was closed.

82.     The ACPO's additional claim that the case had been solved after a "thorough investigation" is also a misrepresentation.

83.     There is no new evidence tying Mr. Creech to the murder of Daniel Walker.

84.     To the contrary, the only evidence supposedly linking Mr. Creech to the Walker murder was a single statement rejected by law enforcement as incredible fifty years ago.

85.     Records that have been in Mr. Creech's file for decades indicate that SBSD had sent an investigator to Idaho in 1975 to question Mr. Creech about possible killings Mr. Creech had done in San Bernardino back in 1975.

86.     On April 28, 1975, Detective Dykes from SBSD questioned Mr. Creech alongside Ada County Sheriff Eldon "Chuck" Palmer.

87.     The questioning on April 28, 1975 was recorded and transcribed.

88.     Mr. Walker's name is never mentioned in the transcript.

89.     Only Sheriff Palmer and Detective Dykes are noted as being present with Mr. Creech during the interview in the transcript.

90.     During the interview there are references to what appears to have been an interview of Mr. Creech involving Detective Dykes the day before, April 27, 1975.

91.     There are several references in the April 28, 1975, transcript that indicate both Detective Dykes and Sheriff Palmer had discussed the killings with Mr. Creech the day before.

92.     Undersigned counsel have been unable to locate a recording or transcription of the April 27, 1975, interview.

93.     In the transcript of the April 28, 1975, interview, Mr. Creech tells Detective Dykes and Sheriff Palmer elaborate stories about six people he claimed either he or his 17-year-old girlfriend Carol Spaulding killed in San Bernardino.

94.     For many of these victims, Mr. Creech gives very specific directions to where he hid the bodies in the local mines.

AMENDED COMPLAINT – Page 12

95.   One of the six victims includes a young man in a van.

96.   Mr. Creech gives Detective Dykes and Sheriff Palmer various details about the killing of this man in a van: Mr. Creech tells them he was driving a "goldish" colored van; this van got stuck on the side of the freeway earlier and a truck driver helped them; they first encountered the victim when Ms. Spaulding was shopping for groceries by herself and the victim made a pass at her; they ended up running into the victim later on their trip; Mr. Creech used a shotgun in the killing; and he stole a few traveler's checks from the victim.

97.   By the time of the April 28, 1975 interview, all of the details that overlap between Mr. Creech's account and the Walker case were already widely publicized on television news programs, in newspaper stories, and paid advertisements as investigators and Mr. Walker's family sought the public's help in solving the crime.

98.   These details included the presence of a gold van, a shotgun as the weapon, and the theft of traveler's checks.

99.   It is therefore clear, under the circumstances, that Detective Dykes had in mind the Walker case when he was questioning Mr. Creech.

100.   The fact that Mr. Creech was not charged or publicly named as the suspect after the 1975 interview shows that law enforcement did not believe they had sufficient evidence.

101.   Mr. Creech was not named or pursued as a suspect because his account and the surrounding circumstances showed his confession was incredible.

AMENDED COMPLAINT – Page 13

102.   At the commutation hearing, the prosecutor noted that Daniel Walker's brother Doug Walker recently published a book about the unsolved murder entitled *Daniel, My Brother: Mystery in the Mojave*, in October 2023.

103.   According to Doug Walker's book, Daniel Walker was driving a Volkswagen van when he was killed.

104.   The book further reports that a hitchhiker named Ken Robinson was in Mr. Walker's van when the killing occurred, and he described two men in a gold GMC or Chevy van as the murderers. Mr. Robinson also got the impression that Mr. Walker knew the killers.

105.   As Doug Walker's book recounts, police later spoke with a beer truck driver who believed he had helped the murderers with their stuck vehicle an hour before the killing. This driver also described two men, one of whom was named "Sam." The truck driver further recalled the men told him they were heading to Indiana to meet up with an ex-wife or child of one of the men.

106.   Mr. Creech, in the April 28, 1975, interview, does not say he and Carol Spaulding were traveling with another man, and he is unable to remember what type of van the victim was driving despite the unique design of a Volkswagen van in comparison to others.

107.   During the same period of time, on June 17, 1975, Ms. Spaulding was questioned by law enforcement under circumstances that make clear that law enforcement were exploring the Walker crime.

AMENDED COMPLAINT – Page 14

108.   At those two interviews, Ms. Spaulding denied the allegations and informed the officers that it sounded to her like Mr. Creech was fabricating his involvement in the crime.

109.   Other aspects of the April 28, 1975 interview reveal how lacking in credibility Mr. Creech's statements were.

110.   For example, immediately after talking about the van murder, Mr. Creech launches into telling Detective Dykes and Sheriff Plamer about a ranch in Malibu, California owned by vegetarian Satanists who had a practice of advertising in the newspaper for hitchhikers that would unwittingly be used for human sacrifices.

111.   In early May 1975, Sheriff Palmer, Ada County Deputy Sheriff Tom Taylor, and Idaho State Police Investigator Bud Mason all flew to San Bernardino with Mr. Creech.

112.   The purpose of this trip was to aid the SBSD in locating the several bodies Mr. Creech claimed to have hidden in the area.

113.   There may have been further questioning about the Walker murder during this trip as well.

114.   Upon information and belief, the Sheriff gave Mr. Creech special treatment in exchange for helping law enforcement.

115.   For example, Mr. Creech was provided with beer while he and law enforcement officers drove around looking for bodies that Mr. Creech claimed to have hidden in the local mines.

AMENDED COMPLAINT – Page 15

116.    In addition, money was given to Mr. Creech for the same purpose.

117.    Mr. Creech was also given cigarettes.

118.    Mr. Creech therefore had an incentive to tell law enforcement about bodies that did not exist.

119.    The May 1975 trip to San Bernardino was unsuccessful and not a single body was recovered.

120.    At the ranch, only a cow bone was recovered.

121.    As one officer said, "it was the only $40,000 cow bone in existence."

122.    During the April 28, 1975 interview, Mr. Creech also claimed to have killed a couple who he referred to as Jerry and Donna Sage.

123.    The people that Mr. Creech referred to as the Sages were not murdered in the 1970s, or ever.

124.    The couple in fact lived for many years thereafter.

125.    In that April 28, 1975 interview, as well, Mr. Creech tells the police both he and Carol Spaulding committed various killings.

126.    Later, on September 30, 1975, Special Assistant Prosecutor Lynn Thomas, a Deputy Attorney General, filed an affidavit with the Valley County District Court stating that the State of Idaho did not believe any of Mr. Creech's statements about how he and Carol Spaulding had participated in these San Bernardino killings.

127.    After all this, Detective Dykes and SBSD appear to have ruled Mr. Creech out as a suspect in Mr. Walker's murder despite his confession.

AMENDED COMPLAINT – Page 16

128.    That is because Mr. Creech was never charged, prosecuted, or convicted for any killings in San Bernardino, or even publicly named as a suspect at the time.

129.    During the same period of time, law enforcement officials publicly linked Mr. Creech to dozens of murders, some real and others of people who seem to never have existed or who were found in good health.

130.    So far as undersigned counsel are aware, there is only one hint suggesting the existence of any information supposedly linking Mr. Creech to the Walker murder separate from the April 28, 1975 interview.

131.    That hint comes from former Ada County Deputy Sheriff Tom Taylor's letter to the Commission, which was included in the ACPO's submissions that were made part of the hearing packet.

132.    In his letter dated December 14, 2023, Mr. Taylor claims that he was present for interviews where Mr. Creech described killing a man in a van in the Barstow, California area who had a diamond ring.

133.    The April 28 transcript does not refer to a diamond ring.

134.    On information and belief, Mr. Walker did not have a diamond ring when he was killed.

135.    Counsel conducted a thorough and extensive search of their file and found no reports by Mr. Taylor or any references to one.

AMENDED COMPLAINT – Page 17

136.    The only transcript of an interview on the subject of San Bernardino murders in counsel's file is the April 28 transcript and Mr. Taylor is not recorded as being present.

137.    In his letter, Mr. Taylor also asks the Commission to deny Mr. Creech's commutation petition.

138.    The fact that the letter comes from someone actively seeking Mr. Creech's execution further undermines its credibility.

139.    On information and belief, there are only two pieces of information allegedly tying Mr. Creech to the Walker case.

140.    One is the interview conducted nearly fifty years ago.

141.    The other is the supposed fact that Mr. Taylor suddenly recalled details of a conversation that took place decades earlier.

142.    The prosecution and Mr. Taylor provided nothing to show that any such conversations were documented contemporaneously.

143.    Consequently, the "thorough investigation," referred to by the prosecutor in her press release, appears to have been reminding the SBSD about what Mr. Creech told Detective Dykes in 1975, perhaps supplemented by Mr. Taylor's new memory.

144.    According to the SBSD press release, the SBDA has been in close contact with the authorities in Ada County.

145.    There has been no word that the SBDA will seek to prosecute Mr. Creech.

AMENDED COMPLAINT – Page 18

146.    On February 22, 2024—six days before Mr. Creech's scheduled execution—the SBDA announced it would not charge Mr. Creech with the murder of Mr. Walker for "jurisdictional" reasons.

147.    The SBDA did not explain what these jurisdictional reasons were.

148.    There is nothing preventing the SBDA from charging Mr. Creech with the murder of Mr. Walker if it genuinely does believe, as it has claimed, that it can prove him guilty beyond a reasonable doubt.

149.    Both the SBDA and the SBSD plan and have planned to be spared the burden of offering any proof to the public or to a court once Mr. Creech has been executed.

150.    Here, the prosecutor at Mr. Creech's clemency hearing offered no new evidence and did not share the fruits of any thorough investigation with the Commission.

151.    Nevertheless, the prosecutor declared before the Commission that the Walker case had been closed.

152.    The prosecutor told the Commission the case had been solved.

153.    The prosecutor told the Commission that Mr. Creech was guilty of murdering Mr. Walker.

154.    The Commission considered the prosecution's claims about the Walker case when it rendered its decision.

155.    Undersigned counsel made several requests that the Commission postpone its decision until Mr. Creech could gather information about the Walker case.

156.    On January 22, 2024, counsel notified the Commission about the issues surrounding the State's claims regarding the Walker case and asked that it wait two months before reaching a decision so counsel could conduct an investigation into the State's new accusation.

157.    Then, on January 25, 2024, counsel updated the Commission on the discrepancy between the prosecution's statements and the SBSD press release as to whether the case was "closed."

158.    Counsel also informed the Commission that his office had timely sent out public records requests related to the Walker investigation.

159.    For both of these reasons, counsel renewed the request for two months to complete an investigation and respond to these new allegations.

160.    On January 26, 2024, Deputy Attorney General L. LaMont Anderson ("DAG Anderson") stated in a letter to the Commission that there is additional information linking Mr. Creech to the Walker murder that was undisclosed in the public statements referenced above.

161.    This additional information has, to date, never been turned over to Mr. Creech, the public, or—on information and belief—the Commission.

162.   Finally, on January 29, 2024, counsel provided the Commission with a letter and attachments further demonstrating the need for a short period of time to gather more information about the San Bernardino allegation.

163.   These requests were denied.

164.   The Commission made a final decision on Mr. Creech's commutation petition on January 29, 2024, after receiving the last letter from undersigned counsel.

165.   Three Commissioners voted in favor of commutation and three voted against.

166.   The three Commissioners who voted for denial of commutation cited the number of victims, which would have included Mr. Walker, as a reason for their decision.

167.   The Commission considered the tie vote to be a denial of the commutation petition.

168.   The prosecution obtained a death warrant the day after the Commission's decision, on January 30, 2024, setting Mr. Creech's execution for February 28, 2024.

169.   On February 22, 2024, the San Bernardino District Attorney Jason Anderson ("DA Anderson") was quoted in the press as indicating that he was not planning on charging Mr. Creech for Daniel Walker's murder.

170.   DA Anderson suggested that Mr. Creech's imminent execution presented an impediment to pursuing charges against him.

AMENDED COMPLAINT – Page 21

171.   Nevertheless, DA Anderson claimed that Mr. Creech was only named as a suspect for the Walker murder because the SBDA had evidence showing that he was guilty beyond a reasonable doubt.

172.   DA Anderson did not describe what that evidence was.

173.   On February 28, 2024, IDOC tried and failed to execute Mr. Creech.

174.   DA Anderson's office has still not filed charges against Mr. Creech for the Walker murder.

175.   There is no statute of limitations for murder.

176.   Law enforcement authorities in Idaho and in San Bernardino have therefore colluded to use the Walker case to facilitate Mr. Creech's execution while keeping all of the supposed evidence secret.

177.   In the United States, everyone has the right to jury of one's peers if facing criminal accusations by the government.

178.   In the United States, everyone has a right to a public trial.

179.   In the United States, everyone has a right to the presumption of innocence that is only overcome by proof beyond a reasonable doubt.

180.   The prosecution here stole these rights from Mr. Creech in a matter of minutes when it charged him, tried him, and convicted him of killing Daniel Walker in the mere moments it took to change a slide in their PowerPoint presentation, based on claims about secret evidence when the same accusations had been rejected by law enforcement fifty years earlier.

181.    This irresponsible and unfair abuse of power was intentionally designed to rob Mr. Creech of what was clearly a strong bid for clemency.

**C.    The Prosecution Falsely Told the Commission That the Murder Weapon Bore Mr. Creech's Name.**

182.    The fight that led to the death of David Jensen began when Mr. Jensen attacked Mr. Creech with a battery-filled sock.

183.    Mr. Creech took the weapon away from Mr. Jensen.

184.    Mr. Jensen then returned to his cell and brought back a toothbrush with a razor blade attached.

185.    The fight continued until Mr. Creech hit Mr. Jensen with the battery-filled sock several times.

186.    The sock broke open and some of the batteries fell out.

187.    Over the last forty-three years, there have been two principal theories for where the sock originated.

188.    Under one account, Mr. Creech provided Mr. Jensen with the sock.

189.    And under a different account it was another inmate who provided the sock.

190.    The answer would have been of great importance throughout the case because it would have either helped the State show Mr. Creech planned the whole assault in advance, as the prosecution posited, or it would have shown that some other inmate set the scheme in motion, which was one of Mr. Creech's main arguments.

AMENDED COMPLAINT – Page 23

191.    This dispute was particularly critical in the yearslong litigation over whether Mr. Creech was entitled to withdraw his guilty plea on the ground that his trial attorney never advised him properly about the nature of self defense.

192.    During the entire history of Mr. Creech's case, to undersigned counsel's knowledge, no one until the commutation hearing had ever maintained or even suggested the battery-filled sock had Mr. Creech's name written on it.

193.    To undersigned counsel's knowledge, none of the police reports surrounding the murder note that Mr. Creech's name is written on the sock.

194.    Detective Dan Douthit was responsible for collecting evidence at the crime scene.

195.    The official police report states that police collected "a white sock with five D cell batteries in it. There was a small amount of blood on the sock."

196.    The police were looking for evidence that the sock had belonged to Mr. Creech.

197.    The official police report states the following: "Prior to our departure, R/O along with Lt. Carr, went in and searched suspect Creech's belongings. We were looking for a matching sock to the one that was used to carry the batteries, since we could not find one in the victim's cell. We came up with three white socks, two matching, one odd. The odd one looked, to this officer, to be the matching sock to the one that was used to carry batteries."

198.   Even though there was a clear incentive to prove the sock belonged to Mr. Creech, no report states that the sock collected from the crime scene had his name written on it.

199.   The commutation hearing on January 19, 2024, was the first time that changed when the prosecutor clearly conveyed to the Commission that the murder-weapon sock bore Mr. Creech's name on it.

200.   The prosecutor did so by presenting the following slide:

201.



202.   The circled sock in the slide was plainly intended to represent the murder weapon.

203.    That is because the sock was meant to undermine the statement in the text on the left by Mr. Creech, which was that the *murder weapon* had the name Garza on it.

204.    The appearance of the circled sock further conveyed to the Commission that it was supposed to show the murder weapon.

205.    That is because the circled sock had discoloration on it potentially suggestive of blood.

206.    It is also because the circled sock had a hole near the toe.

207.    The hole near the toe would have suggested to the viewer that it was caused by the batteries breaking open the murder weapon.

208.    The prosecutor reminded the Commission at the hearing about how the batteries broke through the murder weapon.

209.    Nevertheless, in this Court and weeks after the commutation hearing, the ACPO later asserted that the circled sock was not meant to be the murder weapon, but rather the "odd" sock found in Mr. Creech's cell that matched the murder weapon.

210.    However, the ACPO continued to maintain that the circled sock was designed to refute Mr. Creech's statement to the Commission investigators that the murder weapon said Garza on it.

211.    The ACPO did not explain how it would refute a statement about the murder weapon having a name on it to show a sock that was not the murder weapon.

AMENDED COMPLAINT – Page 26

212.    The ACPO also did not explain what significance it would have to the offense that Mr. Creech's name was on a sock found in his own cell.

213.    In taking its new position, the ACPO relied upon the minutes produced by the Commission for the commutation hearing.

214.    The minutes seem to suggest that the prosecutor described the circled sock as the one that matched the murder weapon rather than being the murder weapon itself.

215.    On information and belief, the minutes do not accurately reflect what the prosecutor said to the Commission.

216.    On information and belief, the minutes were finalized after the Commission had been sued in this case.

217.    By that time, the Commission's interest was in closing the matter and moving on rather than faithfully determining the facts.

218.    The minutes are not a transcript.

219.    The minutes include other errors.

220.    For example, the minutes indicate that the prosecutor stated at the hearing that "she [i.e., the speaker, Jill Longhurst] has been the prosecutor of Ada County for much longer than [Jim] Harris was, and she is here in support of the death penalty today."

221.    However, what Ms. Longhurst actually referenced was *Jan Bennett*s' tenure as prosecuting attorney and her presence at the hearing.

AMENDED COMPLAINT – Page 27

222.    Thus, the minutes are not a reliable record of the words spoken at the hearing.

223.    At the Ninth Circuit, eleven days after its filing in this Court, the ACPO changed its position and told the panel during oral argument for the first time that the circled sock and the un-circled sock were *matching* socks, both found in Mr. Creech's cell.

224.    The ACPO did not explain at that time how a pair of matching socks would contradict the statement by Mr. Creech about the murder weapon that the slide was ostensibly presented to refute.

225.    The ACPO also did not explain at that time what significance it would have to the offense that Mr. Creech's name was found on one of two socks found in his cell.

226.    The two socks in the slide do not match.

227.    At the U.S. Supreme Court, three days after the Ninth Circuit oral argument, the ACPO changed its position again and described the sock as the odd one found in Mr. Creech's cell.

228.    The ACPO at that time still did not explain how the odd sock would have refuted the statement next to it on the slide or been relevant to the offense.

229.    The sock image was not included in the State's section of the hearing packet that was made available in advance to undersigned counsel.

230.    During the oral argument at the Ninth Circuit, the ACPO told the panel that it still had access to the murder weapon.

AMENDED COMPLAINT – Page 28

231.   Nonetheless, the ACPO has not produced any images of that sock to any court, to Mr. Creech's counsel, or—on information and belief—to the Commission.

232.   Previous attempts by undersigned counsel's office to access the sock and related materials have been denied over the years, including when, on July 7, 1999, the Ada County Sheriff's Office refused to make any evidence available to the CHU.

233.   Undersigned counsel sent the Commission letters on January 22, 2024, January 25, 2024, and January 29, 2024, notifying it of the facts above regarding the prosecutor's image, including that he had filed a motion with the state district court for access to the sock.

234.   As a result, counsel asked the Commission for two months so counsel could review the new evidence presented by the prosecutor on the day of the commutation hearing.

235.   Counsel's request was denied.

236.   The Commission considered the sock evidence in reaching its decision.

237.   DAG Anderson responded to two of undersigned counsel's letters regarding the sock in correspondence that was sent to the Commission on behalf of both his own office and the ACPO.

238.   In those letters, DAG Anderson continued to claim that the sock refuted Mr. Creech's statement about the name on the murder weapon.

AMENDED COMPLAINT – Page 29

239.    However, DAG Anderson did not assert in his letters that undersigned counsel was wrong in assuming that the photograph of the sock was meant to depict the murder weapon.

240.    DAG Anderson consequently left the Commission with the impression that undersigned counsel's assumption was correct and that the photograph of the sock was meant to depict the murder weapon.

241.    That is the impression the Commission had when it rendered its decision on Mr. Creech's commutation petition.

**VI.    Claim 1—The Defendants Violated Due Process.**

242.    Mr. Creech incorporates each and every statement and allegation set forth throughout this complaint as if fully rewritten.

243.    The Due Process Clause of the Fourteenth Amendment applies to clemency proceedings. *See Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 288 (1988) (O'Connor, J., concurring); *see also id.* at 290–91 (Stevens, J., concurring in part). At a minimum, due process in clemency proceedings requires advance notice and a chance to contest evidence that will be presented against a petitioner. *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). Similarly, in the clemency context, "a lack of adequate notice of the issues to be considered implicates a fundamental right of due process." *Wilson v. U.S. Dist. Court*, 161 F.3d 1185, 1187 (9th Cir. 1998). Furthermore, "the deliberate fabrication of false evidence" is unacceptable in clemency proceedings under the Due Process Clause. *Woodard*, 523 U.S. at 291

(Stevens, J., concurring in part); *accord Anderson v. Davis*, 279 F.3d 674, 676 (9th Cir. 2002).

244.    The defendants violated Mr. Creech's due process rights by presenting false evidence about the Walker case and the murder weapon at Mr. Creech's commutation hearing without any prior notice to his counsel and without allowing him any opportunity after the hearing to adequately contest the misrepresentations before the Commission rendered its decision.

245.    In sum, the prosecution created the illusion of a new murder conviction as it prepared for the commutation hearing. Then, for the first time at the hearing, the prosecution revealed never-before-seen images of the murder weapon that mysteriously appeared as the prosecution prepared for the commutation hearing. The prosecution gave no notice before presenting either the false image of the sock or making the false statement about the Walker murder to the Commission. Then, the Commission, once on notice of the prosecution's due process violations, refused to allow Mr. Creech time to respond to the false information from the prosecution.

246.    Mr. Creech asserts that he is not required to make any prejudice showing in order to prevail.

247.    In the alternative, Mr. Creech alleges that any prejudice test that applies is satisfied.

248.    The reasons why prejudice is present include but are not limited to the following.

249.    First, the prosecution's claims about the Walker case were sensationalistic and memorable.

250.    Second, the prosecution's claims about the murder weapon were sensationalist and memorable.

251.    Third, the prosecution emphasized the Walker case to the public, which includes the Parole Commission.

252.    Specifically, Defendant Jan Bennetts put out a press release the same day as the commutation hearing, in which she mentioned only two of Mr. Creech's supposed crimes: the Jensen offense and the Walker case.

253.    The press release succeeded in generating a substantial amount of media coverage suggesting that Mr. Creech had been definitively tied to the Walker murder.

254.    Fourth, the three Commissioners who voted against commutation included in their explanation reasons that went to both the Walker case and the murder weapon.

255.    In particular, the three Commissioners in that explanation described the Jensen offense as "coldblooded."

256.    The prosecution's use of the murder weapon was a central component of its argument for why the offense was coldblooded, because it supposedly showed that Mr. Creech orchestrated the altercation rather than being attacked in an unprovoked fashion.

AMENDED COMPLAINT – Page 32

257.   This was an important issue in part as a result of the conflicting statements made by the district court regarding whether the murder weapon originated with Mr. Creech or not.

258.   In 1982, Judge Newhouse wrote that Mr. Creech "did not instigate the fight with the victim, but the victim, without provocation, attacked him."

259.   However, in 1995, Judge Newhouse found that the sock belonged to Mr. Creech.

260.   There was nothing binding the Parole Commission to the 1995 finding.

261.   Rather, the Commission was free to choose between the 1982 description and the 1995 characterization.

262.   It was therefore especially critical for each side to support its own perspective, and equally damaging for the prosecution to do so with false evidence.

263.   The three Commissioners also relied in their statement on Mr. Creech's prior offenses.

264.   As noted, the Walker case was the most dramatic of the prior offenses the prosecution accused Mr. Creech of committing at the commutation hearing.

265.   Fifth and finally, the fact that the Commission tied three-three is itself a strong indication of how close the case was, and therefore points to prejudice.

## VII.   Prayer for Relief

266.   In light of the above, Mr. Creech respectfully requests that the Court:

   a) Order the Commission to provide Mr. Creech with a new hearing where false evidence will not be presented by the prosecution.

AMENDED COMPLAINT – Page 33

b) Alternatively, order the Commission to withdraw its decision and render a new one based only on true evidence.

c) Enjoin the defendants from attempting to execute Mr. Creech until this Court orders otherwise.

d) Declare that Mr. Creech's commutation proceedings were unconstitutional and that the Commission's denial of his petition was therefore legally invalid.

e) Award damages to Mr. Creech for the harms the defendants have inflicted upon him.

f) Authorize appropriate and necessary discovery and an evidentiary hearing to permit Mr. Creech to prove his claim.

g) Afford Mr. Creech a jury trial on his claim.

h) Grant any such other relief that is just and proper.

DATED this 15th day of March 2024.

/s/ *Christopher M. Sanchez*
Christopher M. Sanchez
Jonah J. Horwitz

AMENDED COMPLAINT – Page 34

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of March 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which is designed to send a Notice of Electronic Filing to persons including the following:

Dayton P. Reed
dreed@adacounty.id.gov
Counsel for Defendant Bennetts

Karin Magnelli
kmagnell@idoc.idaho.gov
Rebecca Strauss
rstrauss@idoc.idaho.gov
Counsel for Defendant Parole Commission


<u>*/s/ Julie Hill*</u>
Julie Hill

AMENDED COMPLAINT – Page 35