Nicole Owens
EXECUTIVE DIRECTOR
Christopher M. Sanchez, Idaho Bar No. 12070
Jonah J. Horwitz, Idaho Bar No. 10494
Assistant Federal Defenders
FEDERAL DEFENDER SERVICES OF IDAHO
702 W. Idaho Street, Suite 900
Boise, ID 83702-8929
Telephone: (208) 331-5530
Facsimile: (208) 331-5559
ECF:  Jonah_Horwitz@fd.org
       Christopher_M_Sanchez@fd.org

*Attorneys for Plaintiff Thomas Eugene Creech*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **THOMAS EUGENE CREECH,** | Case No. 1:24-cv-00066-AKB |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR RECUSAL** |
| **IDAHO COMMISSION OF PARDONS AND PAROLE**; and **JAN M. BENNETTS**, Ada County Prosecuting Attorney, in her official capacity, | |
| Defendants. | |

Due to her personal relationship with one of the defendants, for the reasons set forth below, and pursuant to 28 U.S.C. § 455 and the Due Process Clause, Plaintiff Thomas Eugene Creech respectfully asks Judge Brailsford to recuse herself from this case.

I. **Standard**

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which h[er] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Whether a judge's impartiality might reasonably be questioned is "to be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994) (emphasis in original).[1] Thus, the question is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991). Analysis of this question "is necessarily fact-driven and may turn on subtleties in the particular case." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). "If it is a close case, the balance tips in favor of recusal." *Id.* at 912.

Similarly, the Due Process Clause requires recusal when "there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). The due-process test turns on whether "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable" and the court must ask whether "the average judge in [her] position is likely to be neutral." *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (per curiam).

---

[1] Unless otherwise noted, all internal quotation marks and citations are omitted, and all emphasis is added.

Memorandum in Support of Motion for Recusal – Page 2

## II. Facts

During the nomination process for her current federal judicial appointment, Judge Brailsford filled out a questionnaire in which she was asked to recount her history of recusals. *See* Ex. 1 at 21. At the time, Judge Brailsford was sitting on the Idaho Court of Appeals. Judge Brailsford noted that she had only recused herself from one case at the court of appeals. *See id.* In that case, she recused herself sua sponte because the defendant in a criminal appeal had separately "filed a civil action against public officials including the Ada County Prosecutor, who is a personal friend." *Id.* Judge Brailsford explained: "Because the plaintiff filed the action against her individually (not in her capacity as the county prosecutor), I determined that my impartiality might reasonably be questioned and that the issue was incurable." *Id.*

Judge Brailsford was nominated for the federal bench in January 2023. *See* Kelcie Moseley-Morris, *Idaho appeals court judge to be nominated to federal bench, White House announces*, Idaho Capital Sun (Jan. 18, 2023), https://idahocapitalsun.com/briefs/idaho-appeals-court-judge-nominated-to-federal-bench-white-house-announces/. At that time, Defendant Jan M. Bennetts was serving—as she does today—as the elected Ada County Prosecutor. *See* Idaho Prosecuting Attorneys Association, Ada County, Jan Bennetts, https://ipaa-prosecutors.org/prosecutor/ada/. Thus, the Ada County Prosecutor who led Judge Brailsford to recuse herself because the two were personal friends was presumably Defendant Bennetts.

On January 2, 2019, an investiture ceremony was held to mark Judge Brailsford's appointment to the Idaho Court of Appeals. *See* Ex. 2. At the ceremony, Defendant Bennetts made remarks at Judge Brailsford's invitation in which she detailed the thirty-plus-year friendship between the two. *See* Ex. 3 at 1–3.[2] Defendant Bennetts described the "vivid memories" she had of working with Judge Brailsford "nearly 24/7 in . . . chambers" during their shared clerkship, where they met in 1993. *Id.* Reflecting on their time together, Defendant Bennetts spoke fondly of her close relationship with Judge Brailsford:

> You will hear more about Amanda the lawyer from Mr. Andersen in a few moments, but before I leave the podium, a few words about Amanda the friend. Amanda and I met by circumstance, but we became friends by choice. Amanda is the kind of friend you feel incredibly fortunate to find. They're few and far between. She is a remarkable person—compassionate, empathetic and genuine. . . . In the years since our clerkship, I have followed Amanda's career and life with great pride and joy. Pride in a colleague's accomplishments and joy for a very dear friend. We have continued to share lunches, not at the Piper Pub, and although we may go months and even years without catching up, Amanda is the kind of friend for whom I would drop everything if she needed me and I know she would do the same. She shares in the excitement of successes and is supportive in challenging times. You can't ask for more than that.

*Id.* at 2. Defendant Bennetts concluded her remarks by calling Judge Brailsford "a role model in work and in life." *Id.* at 3

---

[2] Exhibit 3 is a partial transcription of the investiture ceremony. The video in its entirety is available at https://www.idahoptv.org/shows/idahoinsession/archive/. It can be found by selecting the subheading "Idaho Supreme Court" under "Idaho Supreme Court Proceedings" and then "Download MP4" under "Investiture of Judge Amanda K. Brailsford, January 2, 2019."

Memorandum in Support of Motion for Recusal – Page 4

At the conclusion of the ceremony, Judge Brailsford voiced her gratitude to Defendant Bennetts from her new seat on the bench: "Thank you to my dear friend Jan Bennetts for your kind words and unfailing support. Jan and I are kindred spirits." *Id.*

## III. Analysis

In Mr. Creech's respectful view, the facts recited above call for recusal.

First, Judge Brailsford appears to have already essentially recognized that her friendship with Defendant Bennetts requires recusal in cases where the latter's conduct is personally implicated. As noted above, Judge Brailsford previously recused herself because of her relationship with Defendant Bennetts when the latter was personally sued by a litigant because, if she had remained on the appeal, her "impartiality might reasonably be questioned." Ex. 1 at 21. In taking that course of action, Judge Brailsford was presumably following Idaho law regarding recusals. *See Bradbury v. Idaho Jud. Council*, 233 P.3d 38, 44 (Idaho 2009) (clarifying that the standard for recusal in Idaho state courts is whether "the judge's impartiality might reasonably be questioned"). The state-law test is for all intents and purposes identical to the federal one. *See id.* at 45 (characterizing federal recusal cases as "instructive" while citing approvingly from them). In short, if there was a potential appearance of partiality in the prior case, there is one here as well.

Mr. Creech recognizes that he did not sue Defendant Bennetts in her personal capacity, as was the case in the appeal in which Judge Brailsford previously recused

Memorandum in Support of Motion for Recusal – Page 5

herself.³ *See* Dkt. 30 at 1 (naming Defendant Bennetts in her professional capacity). Nevertheless, Mr. Creech respectfully suggests that the distinction does not undermine the need for recusal in the present matter. To begin, although Defendant Bennetts has not been sued in her personal capacity in the formal sense, her individual conduct is very much at issue in the litigation. The amended complaint accuses the Ada County Prosecuting Attorney's Office (ACPO) of presenting false evidence at Mr. Creech's commutation hearing. *See id.* at 7–30. As the amended complaint observes, Defendant Bennetts is the head of the ACPO. *See id.* at 3. Consequently, the ACPO was acting in Defendant Bennetts' name and under her supervision when it engaged in the alleged misconduct at issue in the case. If the ACPO is found to have offered false evidence, it would undeniably reflect at least in part on Defendant Bennetts. Indeed, when prosecutorial offices are criticized for serious ethical breaches, elected chiefs routinely become exemplars of the misbehavior in the public sphere. *See, e.g.*, David Alan Sklansky, *The Nature and Function of Prosecutorial Power*, 106 J. Crim. L. & Criminology 473, 517 n.269 (2016) (observing that New Orleans District Attorney Harry Connick and his office became

---

³ Mr. Creech's investigation has been unable to identify either the appeal from which Judge Brailsford recused herself or the civil lawsuit that led to the disqualification. If more information is made available to him about those proceedings, he would compare in more detail the situation then with the circumstances at bar. For instance, it would be noteworthy if the individual in the civil case sued Defendant Bennetts for actions that she took while discharging her duties as Ada County Prosecutor. Then, the fact that the individual sued Defendant Bennetts in her personal capacity would be an even less meaningful distinction from the instant case.

Memorandum in Support of Motion for Recusal – Page 6

"a national whipping boy for violating defendants' rights" after a series of episodes involving the suppression of exculpatory evidence). A reasonable citizen might well question whether a judge would have an incentive not to saddle a "dear friend" with such reputational costs. *See Moran v. Clarke*, 296 F.3d 638, 649 (8th Cir. 2002) (en banc) ("The image of one sitting in judgment over a friend's affairs would likely cause the average person in the street to pause."), *abrogated on other grounds as recognized by Stockley v. Joyce*, 963 F.3d 809, 821 (8th Cir. 2020).

Those costs would be increased by the reasonable citizen's assumption that Defendant Bennetts was closely supervising the activity in question. It has been thirty years since an inmate convicted by the ACPO was executed. *See Wells by and through Kehne v. Arave*, 18 F.3d 656 (9th Cir. 1994) (per curiam). During the same period, a number of individuals sentenced to death in Ada County escaped execution by dying of natural causes in prison or obtaining sentencing relief. *See, e.g.*, *Fields v. Blades*, D. Idaho, No. 1:95-cv-422, Dkt. 372; *Sivak v. Hardison,* 658 F.3d 898 (9th Cir. 2011). Defendant Bennetts herself expressed her individual investment in the execution of Mr. Creech by attending the event in person. *See* Idaho Department of Correction, Execution Updates, https://www.idoc.idaho.gov/content/news/execution-updates. And Defendant Bennetts underscored her role in the commutation proceedings themselves by sitting in the witness gallery during the hearing. The handling prosecutor emphasized her boss's presence to the Commissioners, stressing how long she had been the head of the office and declaring that she was "here in support of the death penalty today." Dkt. 30 at 27; *see* Dkt. 15-2 at 1–2.

Memorandum in Support of Motion for Recusal – Page 7

Given the unusually high-profile nature of the matter, the ACPO's devotion to a long-awaited execution, and Ms. Bennetts' particular association both with putting Mr. Creech to death and with having his clemency petition denied, it is fair to presume that any adverse judicial findings about her office would impact her personally.

Furthermore, Ms. Bennetts is directly tethered to at least some of the wrongful conduct alleged in Mr. Creech's case. For example, the amended complaint takes issue with a press release that the ACPO issued the day of the commutation hearing. In the press release, the ACPO stated—falsely, in Mr. Creech's opinion—that the Daniel Walker case had been "solved." Dkt. 30 at 10. The press release was presented to the public as coming from the ACPO as a whole, not from any individual deputy prosecutor. *See* Dkt. 4-3. No doubt the public would have understood the press release as essentially a statement by Defendant Bennetts, who is the face of the office. It is difficult to imagine that a press release of this sort, which generated publicity from around the country, *see* Dkt. 15-13, would not have been authorized by Defendant Bennetts. The deception at the heart of Mr. Creech's claim is therefore tied in a straightforward fashion to Defendant Bennetts.

It is concerning, for disqualification purposes, that any judicial questioning of the truthfulness of the press release would be inconsistent with the praise Judge Brailsford directed at Defendant Bennetts at her investiture. One of the very first things Judge Brailsford did after donning her robe and taking her official seat on the bench was to commend Defendant Bennetts' scrupulousness, telling the audience

Memorandum in Support of Motion for Recusal – Page 8

that she had won the Idaho State Bar Professionalism Award, which was "most apropos of Jan[.]" Ex. 3 at 3. Judge Brailsford further elaborated that Defendant Bennetts was "a consummate professional every day, all day, for her entire career." *Id.* The factual basis of Mr. Creech's lawsuit directly contradicts Judge Brailsford's statements regarding Defendant Bennetts. That kind of tension spurs reservations in a reasonable onlooker's mind about whether a judge is able "to hold the balance nice, clear and true between the" litigants. *Echavarria v. Filson*, 896 F.3d 1118, 1131 (9th Cir. 2018).

It is also critical to remember the stakes in the litigation and how they affect the recusal inquiry. This is a capital case in which one of Mr. Creech's requested remedies is that an execution be prohibited by the Court. *See* Dkt. 30 at 34. The life-or-death nature of the proceedings has two important implications here. First, "[w]hen a defendant's life is at stake, the [Supreme] Court has been particularly sensitive to insure that every safeguard is observed." *Gregg v. Georgia*, 428 U.S. 153, 187 (1976) (plurality op.). It is especially crucial to ensure that no potential appearance of impropriety attaches to the case, which weighs in favor of disqualification in an abundance of caution. *See Holland*, 519 F.3d at 912 ("If it is a close case, the balance tips in favor of recusal.").

Second, the centrality of an execution to the proceedings makes the social entanglement at issue more problematic. If Mr. Creech's allegations are correct, it would mean that Defendant Bennetts' office sent a man to his attempted execution through deceit. A reasonable person would surely question a judge's willingness to

Memorandum in Support of Motion for Recusal – Page 9

convey such a message to the world about a "dear friend." The dynamic is further complicated by the fact that Judge Brailsford has already denied a stay of execution in connection with the case at bar. *See Creech v. Idaho Comm. of Pardons & Parole*, No. 1:24-cv-066, 2024 WL 756308 (D. Idaho Feb. 23, 2024), *aff'd*, 94 F.4th 851 (9th Cir. 2024) (per curiam). A ruling in Mr. Creech's favor now would signify that Judge Brailsford in February approved of an execution secured by a fraud perpetrated on behalf of a good friend. That is not a scenario conducive to the appearance of complete impartiality. Moreover, and significantly, the capital character of the present action was not a feature of the Idaho Court of Appeal's matter in which recusal was nevertheless warranted, since that tribunal hears no death-penalty cases. As a result, the current case is an even stronger candidate for disqualification.

In addition, the procedural posture of the case favors recusal. The defendants have both filed motions to dismiss Mr. Creech's amended complaint for failure to state a claim. *See* Dkts. 31, 32. If the motions are denied, the case would head into discovery as a matter of course. *See, e.g.*, *Carter v. DeKalb Cnty.*, 521 F. App'x 725, 728 (11th Cir. 2013) (per curiam) ("[D]iscovery follows the filing of a well-pleaded complaint." (emphasis omitted)). Even if there is no ultimate victory for Mr. Creech on the merits, the reasonable outsider would wonder whether a judge might be motivated to shield a close friend from the possibility of discovery uncovering misconduct by her or her office.

By way of one example, when Mr. Creech sought expedited discovery in connection with preliminary-injunction litigation, he requested leave to pose an

Memorandum in Support of Motion for Recusal – Page 10

interrogatory asking who was responsible for the misleading language in the Walker press release discussed above. *See* Dkt. 10-1 at 14. A likely answer would be Defendant Bennetts. Another area that would be ripe for discovery concerns communications between the ACPO and the San Bernardino District Attorney (SBDA). It is undersigned counsel's position that the ACPO and the SBDA have worked in concert so that Mr. Creech would be falsely accused at the commutation hearing of murdering Mr. Walker without either office having to defend the allegations in a court of law. *See, e.g.*, Dkt. 17-1. Undersigned counsel have supported their theory by pointing to the fact that the SBDA, Jason Anderson, has announced that he will not charge Mr. Creech while simultaneously insisting without evidence that he has proof of his guilt beyond a reasonable doubt. *See id.* If permitted, Mr. Creech would pursue discovery into communications between the ACPO and the SBDA. It is foreseeable that such messages would involve Defendant Bennetts, since she is Mr. Anderson's counterpart in Ada County.

Relatedly, the matter of what legal framework the Court brings to bear on Mr. Creech's claim raises impartiality concerns. During the preliminary-injunction dispute, ACPO attorneys—i.e., Defendant Bennetts' subordinates—argued strenuously that precedent does not allow for any consideration of whether prosecutorial assertions at a clemency hearing are true or false. *See* Dkt. 11 at 10–13. This Court agreed with the ACPO and concluded the law permits no judicial inquiry into "the validity of the evidence." *Creech*, 2024 WL 756308, at *5. The upshot of that determination is that there was no investigation by the Court into whether

Memorandum in Support of Motion for Recusal – Page 11

Defendant Bennetts and her staff propagated falsehoods about the commutation evidence. Currently, the Court is being called upon to reassess that interpretation of the law while it adjudicates the motions to dismiss the amended complaint. *See* Dkt. 31-1 at 8; Dkt. 33 at 18–20. The Court's adjudication of the question will resolve, as it did before, whether Defendant Bennetts and her employees are subjected to a judicial evaluation of their honesty, or whether they are spared that experience. It might well cross the mind of a reasonable spectator that a judge would be more inclined to insulate a close friend from such an ordeal.

The tone struck by the ACPO's filings further reinforces the understandable intensity of that office's desire not to be deemed duplicitous. In opposing a preliminary injunction, the ACPO chided Mr. Creech for "recklessly casting aspersions" and "vehemently denie[d] [his] baseless allegations." Dkt. 11 at 10 n.5. Whenever the ACPO has denied the allegations in court filings, it has done so in a document that states, in the very first line, that it is coming from "Jan M. Bennetts," whose name then appears as the first signatory at the conclusion of the pleading as well. *Id.* at 1, 17. In this fashion, Defendant Bennetts has signaled to the Court that she has a strong vested interest in seeing the allegations rejected. Recall that this is from someone who told a public assembly that Judge Brailsford "is the kind of friend for whom I would drop everything if she needed me and I know she would do the same." Ex. 3 at 2. The risks created by this friendship to the appearance of neutrality are undeniable.

Mr. Creech recognizes that "[a] judge is not required to forsake established friendships and professional relationships with members of the bar just because [s]he has taken a seat on the bench." *United States v. Moseian*, 972 F.2d 1346, Nos. 91-10188, 91-10197, 1992 WL 197408, at *5 (9th Cir. Aug. 18, 1992) (per curiam). To that end, Mr. Creech is not suggesting that any case in which Defendant Bennetts' office was previously involved necessitates an automatic recusal by Judge Brailsford. There are doubtlessly many habeas cases, to name one prime category, in which Defendant Bennetts or her underlings represented the State at trial, and in which few if any of the apprehensions outlined above would be present. *See, e.g.*, *Hawkins v. Christensen*, No. 1:13-cv-321, 2022 WL 60667, at *2 (D. Idaho Jan. 6, 2022) (mentioning that Defendant Bennetts served as one of the trial prosecutors in a habeas case). Nonetheless, that does not weaken the case for recusal under the extraordinary facts now before the Court.

What is more, from Mr. Creech's research, it seems that a recusal order here would have limited ramifications for other cases. *See In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 136, 140 (2d Cir. 2007) ("[W]e as judges must balance our duty to appear impartial against several practical considerations, including the availability of other judges, the cost in judicial resources of recusal and reassignment of the case to different judges, and the interest of the parties and the public in a swift resolution of the dispute."). During the ten years in which Defendant Bennetts has been in office, she has only been named as a defendant in a handful of federal actions. In most of them, she has been sued only because the cause of action

Memorandum in Support of Motion for Recusal – Page 13

related to criminal law enforcement in Ada County in some way, and Defendant Bennetts was accordingly a relevant actor as a technical matter. *See, e.g.*, *Planned Parenthood of Great Nw. & Haw. Islands v. Wasden*, 410 F. Supp. 3d 1108 (D. Idaho 2019). Mr. Creech's searches on Westlaw did not reveal a single other federal case remotely comparable to the present one, where Defendant Bennetts has been named in a lawsuit involving serious accusations of false evidence presented by her office in a matter that elicited her personal attention. Far from disrupting the Court's general business, an order of disqualification would only serve to guarantee the public's confidence in the federal judiciary and its determination to be perceived as beyond ethical reproach.

### IV. Conclusion

In light of the above, Mr. Creech respectfully requests that Judge Brailsford grant his motion and recuse herself from this case.

DATED this 10th day of May 2024.

> */s/ Jonah J. Horwitz*
> Jonah J. Horwitz
>
> *Christopher M. Sanchez*
> Christopher M. Sanchez
>
> Attorneys for Plaintiff Thomas Eugene Creech

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 10th day of May 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which is designed to send a Notice of Electronic Filing to persons including the following:

Dayton P. Reed
Heather McCarthy
Sherry A. Morgan
civilpafiles@adacounty.id.gov
Counsel for Defendant Bennetts

Karin Magnelli
kmagnell@idoc.idaho.gov
Rebecca Strauss
rstrauss@idoc.idaho.gov
Counsel for Defendant Parole Commission

                                           */s/ Julie Hill*
                                           Julie Hill