UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS EUGENE CREECH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>IDAHO COMMISSION OF PARDONS AND PAROLE and JAN BENNETTS, Ada County Prosecuting Attorney, in her official capacity,<br><br>　　　　　Defendants. | Case No. 1:24-cv-00066-AKB<br><br>**MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECUSAL** |

Pending before the Court is Plaintiff Thomas Eugene Creech's motion for recusal of the undersigned pursuant to 28 U.S.C. § 455(a) and the Due Process Clause (Dkt. 36). Having reviewed the record, I find that the facts and legal arguments are adequately presented and that oral argument would not significantly aid my decision-making process, and I decide the motion on the briefs. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, I deny Mr. Creech's motion.

## BACKGROUND

In 1995, an Idaho state district court sentenced Mr. Creech to death for murdering another inmate by beating him to death with a sock filled with batteries. After the state court issued a death warrant, the Idaho Commission of Pardons and Parole granted Mr. Creech's petition for a clemency hearing to decide whether to recommend that Idaho's Governor commute Mr. Creech's

death sentence to a fixed life sentence. The Ada County Prosecutor's Office (ACPO) was designated to present on the State's behalf at the hearing.

The Commission held the clemency hearing on January 19, 2024. At that hearing, attorney Jill Longhurst of the ACPO made a presentation recommending against commutation. (Dkt. 11-1 at p. 12) (identifying Ms. Longhurst as presenter). Mr. Creech alleges that during the prosecutor's presentation, she told the Commission he was guilty of murdering Daniel Walker in 1974. (Dkt. 1 at ¶¶ 52-62). Mr. Creech asserts this statement is untrue. (*Id.* at ¶ 64). Further, Mr. Creech alleges that during the presentation, the prosecutor "showed the Commission a slide with an image of a sock with Mr. Creech's name" allegedly "written on it" and that by doing so, she "reveal[ed] a photo of the murder weapon for the first time." (*Id.* at ¶ 164; *id.* at p. 20, § C). Mr. Creech also alleges that on the same day of the hearing, the ACPO issued a press release stating the Walker "cold case was solved" and that Mr. Creech had murdered Walker. (*Id.* at ¶ 63).

On January 29, 2024, the Commission issued a decision denying commutation. On February 5, Mr. Creech filed this action under 42 U.S.C. § 1983 against the Commission and the ACPO, naming Jan Bennetts as a defendant in her official capacity as the elected Ada County Prosecuting Attorney. (Dkt. 1 at p. 1). Mr. Creech alleges his due process rights were violated during the hearing.[1] On February 8, Mr. Creech moved for a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure to enjoin his execution during this case's pendency and for expedited discovery. (Dkts. 4, 10).

I denied those motions. I concluded that while "some minimal procedural safeguards apply to clemency proceedings," a federal court is "not authorized to review the substantive merits of a

---

[1] Although his allegations are lengthy, Mr. Creech's recusal motion focuses on the prosecutor's statements regarding the Walker murder, the photograph of the sock, and the press release.

clemency proceeding." (Dkt. 18 at pp. 8-9) (quotation marks omitted). I found Mr. Creech failed to clearly show he is likely to succeed on the merits of his due process claim because the Commission provided him with more than minimal due process in conducting the hearing. (*Id.* at pp. 10-11). Further, I concluded that because Mr. Creech does not have a constitutional right to a clemency hearing, it necessarily follows he does not have a due process right to post-hearing proceedings including, for example, discovery regarding the clemency hearing. (*Id.* at p. 12).

Finally, although I declined to review the merits, I noted the hearing minutes contradict Mr. Creech's allegations that the prosecutor showed a photograph of the murder weapon; instead, the minutes state she displayed a photograph of "the *matching* sock" found in Mr. Creech's cell. (*Id.* at p. 13) (quoting Dkt. 11-1 at p. 20). I also noted that during the hearing the prosecutor discussed numerous murders which Mr. Creech allegedly committed and that the Commission's decision did not appear to have been unduly influenced either by the Walker murder or by the sock photograph because the Commission did not mention either when explaining its decision. (*Id*. at pp.13-14).

The Ninth Circuit affirmed my decision; the Supreme Court denied Mr. Creech's petition for a writ of certiorari; and the Idaho Department of Correction later suspended the execution because the medical team was unable to carry out the lethal injection. (Dkts. 21, 25, 26). Thereafter, both the Commission and the ACPO moved to dismiss Mr. Creech's complaint in this case under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. After the motions were fully submitted but before I ruled on them, Mr. Creech filed the instant motion to disqualify me. The basis for Mr. Creech's motion is my relationship with the Ada County Prosecuting Attorney, Ms. Bennetts.

In support of Mr. Creech's recusal motion, he filed the declaration of an investigator who attested that, while investigating me in March and April 2024, he discovered my response to the "Questionnaire for Judicial Nominees," which I had submitted to the United States Senate Judiciary Committee in support of my nomination to be a federal district judge. (Dkt. 36-3 at ¶ 3). In that response, I disclosed that, while I was a judge on the Idaho Court of Appeals:

> [A]n individual convicted of a crime in Ada County, Idaho, filed a civil action against public officials including the Ada County Prosecutor, who is a personal friend. Because the plaintiff filed the action against her individually (not in her capacity as the county prosecutor), I determined that my impartiality might reasonably be questioned and that the issue was incurable. I have searched both the Court's electronic database and publicly-available electronic databases and have been unable to locate the case's citation, although I believe the appeal was filed in 2019.

(Dkt. 36-2 at p. 22). Further, the investigator attested he discovered video footage of my January 2019 investiture at the Idaho Court of Appeals. (Dkt. 36-3 at ¶ 5). At this investiture, Ms. Bennetts spoke, and I referred to her as "my dear friend" during my comments. (Dkt. 36-4 at p. 4).

## LEGAL STANDARD

Mr. Creech seeks to disqualify me under the Due Process Clause and 28 U.S.C. § 455, which is the primary source of disqualification law in the federal judicial system. Mr. Creech relies on § 455(a), which provides that "any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The United States Supreme Court has explained the goal of § 455(a) is "to avoid even the appearance of partiality." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (quotation marks omitted). The standard for determining impartiality is purely objective. *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (applying "objective test"); *Clemens v. U.S. Dist. Ct. for Cent. Dist. of Ca.*, 428 F.3d 1175, 1178 (9th Cir. 2005) (same).

The Ninth Circuit has ruled that under § 455(a), the objective inquiry for determining impartiality is whether a reasonable person with knowledge of all the facts would conclude the judge's impartiality might reasonably be questioned or would perceive a significant risk the judge would resolve the case on a basis other than the merits. *Holland*, 519 F.3d at 913. A reasonable person for purposes of the inquiry is a "well-informed, thoughtful observer" and not a "hypersensitive or unduly suspicious" person. *Id.* (quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990)); *see also Clemens*, 428 F.3d at 1178 (stating standard and describing reasonable person's nature).

An analysis of whether § 455(a) requires disqualification "is necessarily fact-driven and may turn on subtleties in the particular case." *Holland*, 519 F.3d at 913. The court must be guided by an independent examination of the unique facts and circumstances and not by a comparison to similar situations in other cases. *Id.* Further, "[t]he standard 'must not be so broadly construed that it becomes, in effect presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.'" *Id.* (quoting *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)). When the law and the facts do not support a legitimate reason for disqualification, a judge has a "strong . . . duty to sit." *Clemens*, 428 F.3d at 1179 (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)).

Like § 455(a)'s objective standard, "the Due Process Clause may sometimes demand recusal even when a judge has no actual bias." *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (per curiam) (quotation marks and alteration omitted). Under the Due Process Clause, "[r]ecusal is required when, objectively speaking, the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* (quotation marks omitted). The inquiry is "not whether a judge harbors an actual, subjective bias, but instead whether, as an

objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (quotation marks omitted). The Ninth Circuit has stated that this inquiry "reaches every procedure which would offer a possible temptation to the average judge to forget the burden of proof or which might lead him not to hold the balance nice, clear and true between the State and the accused" and that it "requires a realistic appraisal of psychological tendencies and human weaknesses." *Echavarria v. Filson*, 896 F.3d 1118, 1131 (9th Cir. 2018) (quotation marks and alteration omitted).

## ANALYSIS

Mr. Creech asks the Court to enter an order of disqualification "to guarantee the public's confidence in the federal judiciary" and to ensure the Court's decisions will be "perceived as beyond ethical reproach." (Dkt. 36-1 at p. 14). In support, Mr. Creech characterizes my relationship with Ms. Bennetts as, for example, a "thirty-plus-year friendship" and a "social entanglement." (*Id.* at pp. 4, 9). Based on his characterization of the relationship, Mr. Creech argues, among other things, that I might not want to "saddle" Ms. Bennetts with "the reputational cost[]" of criticism "for serious ethical breaches" and that I might be "motivated to shield a close friend from the possibility of discovery uncovering [her] misconduct." (*Id.* at pp. 6-7, 10). Mr. Creech's characterization of my relationship with Ms. Bennetts, however, is both inaccurate and unsupported.

Ms. Bennetts and I worked together in the chambers of the Honorable Thomas G. Nelson of the Ninth Circuit Court of Appeals as law clerks from approximately August 1993 until August 1994, when Ms. Bennetts' clerkship concluded. My clerkship with Judge Nelson had the hallmarks of a clerkship with which many current and former law clerks are familiar, including long hours in chambers, hard work, mutual support, and camaraderie among chambers staff. During the year

that I clerked with Ms. Bennetts, we became friends. After Ms. Bennetts' clerkship concluded, however, I lost touch with her. We did not pursue a personal friendship independent of our shared clerkship experience.

For example, since Ms. Bennett's clerkship concluded, she has never been to my home nor I to hers. We have not taken vacations together, celebrated holidays together, or shared family occasions together. We have not regularly communicated either by correspondence or by telephone, and in fact, we have rarely communicated. Occasionally, however, I have seen Ms. Bennetts at professional events including, for example, at Idaho State Bar events, at a picnic Judge Nelson organized for his former law clerks, and at a judicial memorial service for him in 2011. None of these encounters were planned. I did, however, briefly reconnect with Ms. Bennetts after being appointed to the Idaho Court of Appeals in January 2019. Our interactions were limited to meeting before my investiture, attending the investiture, and meeting again shortly after the investiture.

While my relationship with Ms. Bennetts began in 1993, my personal interactions with her since 1994 have been very limited and professional rather than social in nature. Courts have concluded that such a relationship does not give rise to grounds for disqualification. For example, in *United States v. Lovaglia*, 954 F.2d 811 (2d Cir. 1992), the Second Circuit considered the "temporal context" of a relationship between a judge and lawyer who had been "very close socially" but whose social relationship had "drifted away and ceased" before the judge was asked to recuse himself in a case involving the lawyer. *Id.* at 816. The Second Circuit held that the judge did not abuse his discretion by refusing to recuse himself because the social relationship had ended "seven or eight years" before the disqualification issue arose. *Id.* at 817; *see also Moran v. Clarke*, 296 F.3d 638, 649 (8th Cir. 2002) (en banc) (considering "depth and duration" of relationship

including "reciprocal visits to one another's homes" in analyzing recusal request), *abrogated in part on other grounds* by *Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017).

In resolving Mr. Creech's recusal motion, I conclude that a reasonable person with knowledge of *all* the facts of my relationship with Ms. Bennetts would *not* either conclude my impartiality might be reasonably questioned or perceive a significant risk that I would resolve the case on a basis other than the merits. *See Holland*, 519 F.3d at 913 (identifying standard under § 455(a)). Further, under the Due Process Clause, I conclude an objective observer would *not* conclude the probability of an actual bias on my part is too high to be constitutionally tolerable. *See Rippo*, 580 U.S. at 287 (identifying Due Process standard for recusal). Rather, my relationship with Ms. Bennetts is within the bounds of the legal profession's ordinary standard of conduct for two former law clerks who worked closely together for a short period thirty years ago and who temporarily rekindled that relationship to briefly celebrate a professional achievement. *See United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985) (discussing the common and desirable "legal culture friendships among judges and lawyers"). Under such circumstances, "a well-informed, thoughtful observer" would not question my impartiality. *Holland*, 519 F.3d at 913.

Despite the limited, professional nature of my relationship with Ms. Bennetts, Mr. Creech argues that I "have already essentially recognized [my] friendship with [Ms.] Bennetts requires recusal in cases where [her] conduct is personally implicated." (Dkt. 36-1 at p. 5). I disagree. Mr. Creech bases his argument on the fact that, sometime in early 2019 after my investiture at the Idaho Court of Appeals, I recused myself from an appeal in a case filed against Ms. Bennetts personally. I have some recollection of this recusal but have been unable to locate the case or any information related to it, as I noted in my response to the Questionnaire for Judicial Nominees. (Dkt. 36-2 at p. 22). I recall, however, recusing myself both because I had recent interactions with

Ms. Bennetts in 2019 and because the case specifically named her personally in her individual capacity. Contrary to Mr. Creech's argument, the fact that I recused myself in that case under different circumstances more than five years ago is not a basis for my disqualification in this case. *See Diversified Numismatics, Inc. v. City of Orlando, Fla.*, 949 F.2d 382, 385 (11th Cir. 1991) ("Prior recusals, without more, do not objectively demonstrate an appearance of partiality."); *see also Holland*, 519 F.3d at 913 (noting analysis must be based on unique facts and circumstances of each case); *Lovaglia*, 954 F.2d at 816 (considering temporal context).

Moreover, since 2019, I have routinely presided over cases involving the ACPO while Ms. Bennetts has been the elected Ada County Prosecuting Attorney.[2] Although I have not tallied the number of or the results in those cases, both the Commission and the ACPO have provided citations to at least some of the cases. (*See* Dkt. 37 at p. 4 (citing decisions ruling against ACPO's interests); *id.* at pp. 4-5 (citing decisions addressing allegations of ACPO's prosecutorial misconduct); Dkt. 38 at pp. 7-8 (same)). For example, I authored *Baker v. State*, 494 P.3d 1256 (Idaho Ct. App. 2021). In that appeal, the Idaho Court of Appeals reversed the dismissal of Baker's post-conviction petition challenging his conviction for first-degree murder of an infant. *Id.* at 1262. The court remanded the case for an evidentiary hearing to determine whether the ACPO had failed to produce exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), including evidence that an incarcerated witness received favorable treatment in exchange for his trial testimony against Baker. *Baker*, 494 P.3d at 1273-79.

In other words, I have already ruled in favor of a defendant in a first-degree murder case in a manner raising questions about the ACPO's ethical behavior during a period when

---

[2] Ms. Bennetts has been the elected Ada County Prosecuting Attorney since 2014. (Dkt. 38 at p. 7 n.2).

Ms. Bennetts was the elected Ada County Prosecuting Attorney. As in this case, the record in *Baker* did not reflect Ms. Bennetts' involvement in any unethical decisions.[3] Baker's defense counsel, however, could have conceivably questioned Ms. Bennetts' personal conduct on remand. Nevertheless, I was not motivated to rule against Baker to protect Ms. Bennetts. My ruling in *Baker* in 2021 contradicts Mr. Creech's argument in this case that a reasonable person would believe I am biased and motivated to rule in the ACPO's favor to protect Ms. Bennetts.

I am also not persuaded by Mr. Creech's other arguments that my impartiality is reasonably questioned in this case. Those arguments include that "the stakes" in this case, the case's procedural posture, the applicable legal framework, and the ACPO's "tone" in response to Mr. Creech's allegations justify my recusal. (Dkt. 36-1 at pp. 9-12). Contrary to these arguments, the applicable standards and analysis remain the same despite that Mr. Creech is subject to the death penalty. Mr. Creech has not cited any legal authority to the contrary.

Absent a legitimate reason justifying recusal, "a judge should participate in cases assigned." *Holland*, 519 F.3d at 912 (quotation marks omitted). Such is the case here. Accordingly, based on the foregoing, I deny Mr. Creech's motion for recusal.

## ORDER

**IT IS ORDERED** that Plaintiff's Motion for Recusal (Dkt. 36) is **DENIED**.

DATED: July 08, 2024

Amanda K. Brailsford
U.S. District Court Judge

---

[3] While Mr. Creech accuses Ms. Bennetts personally of unethical behavior in his recusal motion, those accusations are unsupported conjecture. (*See, e.g.*, Dkt. 36-1 at p. 8) (asserting Ms. Bennetts is "directly tethered" to wrongful conduct).