Nicole Owens
EXECUTIVE DIRECTOR
Christopher M. Sanchez, Idaho Bar No. 12070
Jonah J. Horwitz, Idaho Bar No. 10494
Assistant Federal Defenders
FEDERAL DEFENDER SERVICES OF IDAHO
702 W. Idaho Street, Suite 900, Boise, ID 83702-8929
Telephone: (208) 331-5530; Facsimile: (208) 331-5559
ECF:   Jonah_Horwitz@fd.org
       Christopher_M_Sanchez@fd.org

*Attorneys for Plaintiff Thomas Eugene Creech*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **THOMAS EUGENE CREECH,** | **CASE NO. 1:24-cv-00066-AKB** |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF MOTION FOR STAY PENDING MANDAMUS PROCEEDINGS** |
| **IDAHO COMMISSION OF PARDONS AND PAROLE; JAN M. BENNETTS**, Ada County Prosecuting Attorney, in her official capacity, | |
| Defendants. | |

For the reasons that follow, Plaintiff Thomas Eugene Creech respectfully asks the Court to stay the present proceedings until the Ninth Circuit has ruled on his pending mandamus petition. *See* Ex. 1. To obtain a stay pending mandamus proceedings, Mr. Creech must demonstrate 1) a likelihood of success on the merits; 2) the prospect of irreparable harm in the absence of relief; 3) the equities favor his

Memorandum in Support of Motion for Stay Pending Mandamus Action – Page 1

motion; and 4) the public interest does too. *See Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, No. 2:15-cv-133, 2015 WL 3623369, at *1 (E.D. Cal. June 9, 2015).[1] Mr. Creech can satisfy each factor.[2]

## I. Mr. Creech is likely to succeed on the merits.

First, Mr. Creech can show that he is likely to succeed on the merits of his claim. Mr. Creech's claim is that Judge Brailsford should have recused herself from the proceeding based on her relationship with Defendant Jan Bennetts, the elected Ada County Prosecutor. *See generally* Dkt. 36-1. Disqualification is required whenever a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Whether a judge's impartiality might reasonably be questioned is "to be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 547–48 (1994) (emphasis in original). Thus, the question is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991).

As set forth in Mr. Creech's recusal motion, he has presented facts that create an appearance of partiality to a reasonable observer. Specifically, when Judge Brailsford was nominated to the federal bench in 2023, she indicated on a Senate

---

[1] In this pleading, unless otherwise noted, all internal quotation marks and citations are omitted, and all emphasis is added.

[2] Every part of this memorandum is incorporated into every other part.

Memorandum in Support of Motion for Stay Pending Mandamus Action – Page 2

questionnaire that she only recused herself once while on the state judiciary, in approximately 2019, and her reason was that a party had sued Defendant Bennetts, "who is a personal friend." Dkt. 36-2 at 21. As the recusal motion further recounted, at Judge Brailsford's investiture to the state bench in 2019, Defendant Bennetts remarked that Judge Brailsford "is the kind of friend you feel incredibly fortunate to find," someone with whom she "continued to share lunches," and "the kind of friend for whom I would drop everything if she needed me." Dkt. 36-4 at 1–2. Judge Brailsford spoke as well and characterized Defendant Bennetts as her "dear friend." *Id.* at 3.

The recusal motion argued that Defendant Bennetts' friendship with Judge Brailsford generated an appearance of partiality. It emphasized that Defendant Bennetts was named individually in the present litigation and that she personally invested herself in the underlying clemency proceedings by attending the commutation hearing—where she was acknowledged publicly by the handling prosecutor—and likewise attended the failed execution attempt on Mr. Creech. *See* Dkt. 36-1 at 7–8. Furthermore, Mr. Creech emphasized that one of the false statements he is challenging was made in a press release by the Ada County Prosecuting Attorney's Office (ACPO) as a whole and was therefore essentially from Defendant Bennetts. *See id.* at 8. Mr. Creech observed that a denial of the defendants' pending motions to dismiss would channel the case into discovery, during which any potential involvement by Defendant Bennetts might be uncovered. *See id.* at 10. Finally, Mr. Creech stressed that because Judge

Memorandum in Support of Motion for Stay Pending Mandamus Action – Page 3

Brailsford previously denied a stay of execution based on the clemency claims, a ruling in his favor later on would mean that she had approved of an execution secured by a fraud perpetrated on behalf of a good friend, which made for an untenable position. *See id.* Mr. Creech reiterates the same points now and contends that they establish a likelihood of success at the Ninth Circuit.

Respectfully, this Court's contrary reasoning in its recusal order does not change the bottom line. To begin, the Court's description of the relationship between Judge Brailsford and Defendant Bennetts is difficult to reconcile with the record. The Court essentially claimed that Judge Brailsford and Defendant Bennetts were only friends when they clerked together in 1993 and 1994, after which they "lost touch." Dkt. 40 at 6–7. But it was in 2023, less than two years ago, that Judge Brailsford told the U.S. Senate that Defendant Bennetts "*is* a personal friend." Dkt. 36-2 at 21. The use of the present tense does not reflect a friendship that ended thirty years earlier. It was also in 2019 that Defendant Bennetts stated at the investiture that the two "continued to share lunches" and that Judge Brailsford is "the kind of friend for whom I would drop everything if she needed me." Dkt. 36-4 at 1–2. Notably, while listing various types of occasions at which the two either did or did not see each other, the recusal order omits any reference to lunches, even though those were the events that Defendant Bennetts specifically recounted at the investiture. *See* Dkt. 40 at 7. At any rate, the statements about the friendship made at the investiture were statements about the present—and the future—not about a moment in time three decades earlier.

Memorandum in Support of Motion for Stay Pending Mandamus Action – Page 4

Nor would a friendship that ended in 1994 explain why Judge Brailsford recused herself from a case based on the same relationship in *2019*. *See* Dkt. 36-2 at 21. The recusal order minimizes the prior disqualification on the ground that Judge Brailsford took that path "both because I had recent interactions with Ms. Bennetts in 2019 and because the case specifically named her personally in her individual capacity." Dkt. 40 at 8–9. For one thing, that is inconsistent with the Senate questionnaire, which did not say the prior recusal was because of recent interactions—it said the disqualification was because Defendant Bennetts "is a personal friend." Dkt. 36-2 at 21. And for another, the order denying Mr. Creech's recusal motion itself raises questions about the accuracy of its timeline. The order asserts that Judge Brailsford's "personal interactions with" Defendant Bennetts "since 1994 have been very limited and professional rather than social in nature." Dkt. 40 at 7. If that is correct, though, why would recusal have been merited in 2019? Presumably, there was—in 2019—a close enough *friendship* such that recusal was necessary. That is not a friendship that ended in 1994.

The recusal order's other basis for attempting to distinguish the prior disqualification decision was that, in the earlier appeal, "the case specifically named her personally in her individual capacity." Dkt. 40 at 9. That somewhat opaque phrase does not remove the appearance of partiality. To start, it is not clear what the district court meant by it. Mr. Creech has also "specifically named" Ms. Bennetts "personally." *See* Dkt. 15 at 1.

Memorandum in Support of Motion for Stay Pending Mandamus Action – Page 5

And while it is true that Mr. Creech named Ms. Bennetts in her professional capacity, it is hard to fathom what difference that makes. In Idaho, state officers can be sued in their individual capacities for claims arising from their employment. *See Conley v. Looney*, 790 P.2d 920, 922 (Idaho Ct. App. 1989). That is likely what occurred in the prior recusal, since the individual involved was "convicted of a crime in Ada County" and "filed a civil action against public officials including the Ada County Prosecutor." Dkt. 36-2 at 21. In other words, the individual filed a lawsuit in which he named Ms. Bennetts based on actions that she took as Ada County Prosecutor. That is precisely what Mr. Creech has done. Finally, if the implication is that Ms. Bennetts would have been personally liable in the prior civil case, that too does not make the matter more serious—she could have been liable for a small sum, and in any event the commission of serious ethical breaches in a capital proceeding is hardly trivial. At a minimum, considering that neither Judge Brailsford nor Ms. Bennetts offers any illumination of any of these possibilities, the reasonable person would suspect that no real distinction exists. *See In re Al-Nashiri*, 921 F.3d 224, 237 (D.C. Cir. 2019 (characterizing the average observer for recusal purposes as someone "all too willing to indulge suspicions and doubts concerning the integrity of judges").

The recusal order contended that Judge Brailsford has shown her willingness to rule against the ACPO, thus dispelling any appearance of partiality. *See* Dkt. 40 at 9. To prove as much, the order cites a single decision: *Baker v. State*, 494 P.3d 1256 (Idaho Ct. App. 2021). *See* Dkt. 40 at 9. As an initial matter, Mr. Creech

Memorandum in Support of Motion for Stay Pending Mandamus Action – Page 6

calculated that Judge Brailsford participated in approximately 618 cases involving the ACPO—a number the recusal order does not dispute. *See* Dkt. 39 at 8. Mr. Creech submits that one adverse decision out of 618 (which comes to .16%) is not a fraction that leaps to mind as a paragon of balance. What is more, while the recusal order calls *Baker* a case "raising questions about the ACPO's ethical behavior," Dkt. 40 at 9, there is no language about ethics in the opinion. To the contrary, *Baker* is written in an extremely mild manner. *See* 494 P.3d at 1278 ("The prosecutor's strategic decision to present facts related to these arguments and to make them during closing argument may have heightened the prosecution's obligation to investigate their veracity."). That is quite a different situation than one in which the ACPO has been accused of telling blatant lies at a clemency hearing.

The recusal order seeks to connect *Baker* to the instant case on the additional theory that, in both, "the record . . . did not reflect Ms. Bennetts' involvement in any unethical decisions." Dkt. 40 at 10. There are multiple flaws in that approach. One is that it overlooks the reality that there could be an appearance of partiality even if Defendant Bennetts was not personally involved in every such decisions. That is because Defendant Bennetts *was* personally invested in the Creech commutation in a way that was certainly not the case in *Baker*. *Baker* was a non-capital first-degree murder case—the kind of prosecution that takes place multiple times every year in Ada County. By contrast, in Mr. Creech's case, the ACPO was attempting to put to death an inmate for the first time in thirty years. *See* Dkt. 36-1 at 7. It was doing so at a commutation hearing where Defendant Bennetts

Memorandum in Support of Motion for Stay Pending Mandamus Action – Page 7

appeared personally and was called out to the Commission, followed by a press release from her office as a whole, and all leading to an execution that she tried to witness in person. *See id.* There is nothing remotely comparable in *Baker*.

Another defect in the recusal order's treatment of *Baker* is that it misunderstands the significance of the procedural posture of the case at bar. The recusal order posits that "[w]hile Mr. Creech accuses Ms. Bennetts personally of unethical behavior in his recusal motion, those accusations are unsupported conjecture." Dkt. 40 at 10 n.3. If anything, that cuts in favor of recusal. As mentioned, a ruling in Mr. Creech's favor on the motions to dismiss would usher the case into discovery. With the benefit of discovery, Mr. Creech would have the tools to explore who at the ACPO was involved in what decisions, including Defendant Bennetts. *See* Dkt. 36-1 at 10–11. A reasonable person could certainly feel that a judge would be inclined to shield a "dear friend," Dkt. 36-4 at 3, from the prospect of such an investigation. There is more than enough of a factual basis for a reasonable person to suspect that Defendant Bennetts was personally involved in decisions affecting a high-profile case that she took a direct interest in. That is all that Mr. Creech must show to justify recusal—he cannot provide proof that is unavailable to him. *See United States v. Microsoft Corp.*, 253 F.3d 34, 115 (D.C. Cir. 2001) ("Appearance may be all there is, but that is enough.").

Finally, the recusal order brushed off the idea that the capital nature of the case matters. According to the order, "the applicable standards and analysis remain the same despite that Mr. Creech is subject to the death penalty." Dkt. 40

Memorandum in Support of Motion for Stay Pending Mandamus Action – Page 8

at 10. The order faulted Mr. Creech for not having "cited any legal authority to the contrary." *Id.* at 10. Yet Mr. Creech referred the Court to *Gregg v. Georgia*, 428 U.S. 153, 187 (1976) (plurality op.), for the proposition that in capital cases courts must be "particularly sensitive to insure that every safeguard is observed." Dkt. 36-1 at 9. In the fifty years since *Gregg*, the Supreme Court and the Ninth Circuit have consistently adhered to the same straightforward rule: that courts err on the side of caution when their decisions carry life and death stakes. *See, e.g., Atkins v. Virginia*, 536 U.S. 304, 352–53 (2002) (Scalia, J., dissenting) (critiquing the Court's "death-is-different jurisprudence" and listing ten cases falling in that category); *California v. Ramos*, 463 U.S. 992, 998–99 (1983) ("The Court . . . has recognized that the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination."); *Lambright v. Stewart*, 191 F.3d 1181, 1185 (9th Cir. 1999) ("[W]e do not denigrate the reflection that death is different from other penalties; it most assuredly is.").

Based on that long tradition, the D.C. Circuit has recognized the obvious: "In no proceeding is the need for an impartial judge more acute than one that may end in death." *In re Al-Nashiri*, 921 F.3d at 239. In fact, "the gravity of [that] penalty . . . make[s] the need for an unimpeachable adjudicator all the more important." *Id.* at 241. Indeed, it is particularly ironic in the present case that a defendant in a non-capital appeal in 2019 obtained the benefit of such caution while Mr. Creech does

not in a proceeding where his life and death may be determined.  The discrepancy does not bode well for the recusal order's fate at the Ninth Circuit.

Mandamus is a recognized vehicle for challenging recusal decisions at the circuit.  *See, e.g.*, *In re Gibson*, 950 F.3d 919, 922 (7th Cir. 2019) ("We have long recognized that a petition for writ of mandamus is an appropriate method to seek recusal of a district judge under 28 U.S.C. § 455(a).").  A petition for mandamus will be granted in the recusal context when it is "manifestly clear that a reasonable observer would question the Judge's impartiality on the pending issue." *In re IBM*, 45 F.3d 641, 644 (2d Cir. 1995).  Because Mr. Creech has identified facts that cast doubt on the neutrality of the judge here, and because the recusal order does not adequately refute them, there is a likelihood of success on the merits.

In the alternative, the Ninth Circuit has held that with respect to preliminary injunctions a movant need not necessarily show a likelihood of success on the merits.  Instead, "a preliminary injunction may issue where the plaintiff shows only that serious questions going to the merits were raised and the balance of hardships tip sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The same formulation of the factor also applies in the stay-pending-appeal context.  *See FTC v. Qualcomm Inc.*, 935 F.3d 752, 756 (9th Cir. 2019) (per curiam).  Here, Mr. Creech has at a minimum posed "serious questions going to the merits" with the facts outlined above, and he will address the balance of hardships below.

## II. The irreparable harm factor favors a stay.

Next, there will be irreparable harm in the absence of a stay. Such harm will be done to the standing of the judicial system as a whole. *See Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 162 (3d Cir. 1993) (relying on "the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted"). "While review after final judgment can (at a cost) cure the harm to a litigant, it cannot cure the additional, separate harm to the public confidence that section 455 is designed to prevent." *In re School Asbestos Litig.*, 977 F.2d 764, 778 (3d Cir. 1992).

## III. The balance of equities and the public interest favor a stay.

Lastly, the equities and the public interest call for a stay. As to the equities, a stay will not prejudice the defendants whatsoever as it will merely preserve the status quo. More importantly, the public has a strong interest in maintaining a court system that is beyond reproach, and such an interest is undercut when there are lingering questions about the partiality of a judge presiding over a capital case. *See In re Al-Nashiri*, 921 F.3d at 240 (granting a mandamus petition seeking recusal and reasoning that "[a]ny institution that wields the government's power to deny life and liberty must do so fairly, as the public's ultimate objective is not in securing a conviction but in achieving a just outcome," and such an objective would not be fulfilled if the litigation went forward "under a cloud of illegitimacy"); *Union Carbide Corp. v. U.S. Cutting Serv.*, 782 F.2d 710, 712 (7th Cir. 1986) ("A judge's refusal to recuse himself in the face of a substantial challenge casts a shadow not

Memorandum in Support of Motion for Stay Pending Mandamus Action – Page 11

only over the individual litigation but over the integrity of the federal judicial process as a whole.").

Furthermore, the efficiency gains accomplished by a stay are to the public's advantage. Consider a scenario in which the Court declines to stay the matter and enters an order granting the motions to dismiss. If the mandamus petition ends up prevailing at the Ninth Circuit, the decision dismissing the case here would almost certainly have to be vacated. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988) (holding that a decision made prior to a recusal should be vacated if there is a risk of injustice to the parties or others or a "risk of undermining the public's confidence in the judicial process"); *In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136, 1146 (6th Cir. 1990) (interpreting *Liljeberg* as requiring the vacatur of a ruling on summary judgment because the contrary approach "would substantially undermine the public's confidence in the judicial process").

Relitigating the motions to dismiss before a new judge would be a needless waste of taxpayer-funded resources in the judiciary, as well as for the attorneys representing all of the parties. That is presumably why courts routinely grant stays of district court litigation pending mandamus petitions in recusal cases. *See, e.g., In re Sussex*, 781 F.3d 1065, 1069 (9th Cir. 2015); *In re United States*, 572 F.3d 301, 307 (7th Cir. 2009); *In re Pressman-Gutman Co.*, 459 F.3d 383, 391 n.8 (3d Cir. 2006). The same prudent course is appropriate here.

## IV. Conclusion

For the reasons set forth above, undersigned counsel respectfully ask the Court to stay the proceedings until the Ninth Circuit has adjudicated the pending mandamus petition.

DATED this 19th day of July 2024.

<u>/s/ Jonah J. Horwitz</u>
Jonah J. Horwitz
Christopher M. Sanchez

Federal Defender Services of Idaho

*Attorneys for Plaintiff Thomas Eugene Creech*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 19th day of July 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which is designed to send a Notice of Electronic Filing to persons including the following:

Kristina Schindele
krschind@idoc.idaho.gov
Counsel for Defendant Parole Commission

Karin Magnelli
kmagnell@idoc.idaho.gov
Counsel for Defendant Parole Commission

Rebecca Strauss
rstrauss@idoc.idaho.gov
Counsel for Defendant Parole Commission

Dayton P. Reed
Heather McCarthy
Sherry A. Morgan
civilpafiles@adacounty.id.gov
Counsel for Defendant Bennetts

                                         */s/ Julie Hill*
                                         Julie Hill