Maya P. Waldron
WALDRON LEGAL, PLLC
PO Box 1316
Boise, ID 83701
208-244-0735
maya@waldronlegal.com

Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
208-724-2617
chd@fergusondurham.com

*Attorneys for Amicus Curiae Doug Walker*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS EUGENE CREECH,<br><br>    Plaintiff,<br><br>    v.<br><br>IDAHO COMMISSION OF PARDONS AND PAROLE; JAN M. BENNETTS, Ada County Prosecuting Attorney, in her official capacity,<br><br>    Defendants. | Case No. 1:24-cv-00066-GMS<br><br>**BRIEF OF *AMICUS CURIAE* DOUGLAS WALKER** |

1

I.  Introduction

*Amicus curiae* Douglas Walker asks that the Court grant Thomas Creech's emergency motions for a preliminary injunction, an administrative stay of execution, and to expedite discovery, Dkts. 53–55.

According to the San Bernardino, California, Sheriff's Department and the Ada County Prosecuting Attorney's Office, Thomas Creech murdered Daniel Ashton Walker, Jr., Douglas Walker's brother, over 50 years ago. Douglas, representing the Walker family, is now concerned that those law enforcement entities may have falsely portrayed the thoroughness of the re-investigation into Daniel's murder and the conclusiveness of the evidence pointing to Creech's guilt. As a member of a murder victim's family, Douglas has a right to be heard during the criminal justice process about the alleged murderer and his fate. That right is only meaningful if state actors give the victim's family full, complete, and accurate information.

Douglas and the Walker family hope that the additional time and discovery will allow them to gather more information about Daniel's death and Creech's possible involvement.

II.  Interest of the *Amicus*

Daniel's family has an interest in seeing that justice is done in Daniel's murder case. Douglas was involved in the recent Creech clemency proceeding that is at issue in this case. He brings a unique perspective to the Court's consideration of Creech's emergency motions, not provided by any other party, as he can offer the Court with

his view of the events leading up to and after the clemency hearing pertaining Daniel's murder.

**III.    Background**

In 1974, Daniel Ashton Walker, Jr., was shot to death while he slept in his van parked along the side of Interstate 40 west of Needles, California, in a remote part of San Bernardino County. The case quickly grew cold. Walker Decl. ¶ 4. For over 49 years, the San Bernardino County Sheriff's Department (the "Sheriff's Department") told Douglas Walker and his family that detectives had been unable to identify any suspects in Daniel's murder. Walker Decl. ¶ 4. Over the years, Douglas routinely checked in on the progress of the investigation with the cold case detectives. *Id.* The story was always the same: There were no leads. *Id.* Detectives seemed to have little interest in investigating the case, and Douglas felt as if he was burdening them with his inquiries. *Id.*

Then, on January 16, 2024, cold case Detective Justin Carty unexpectedly called Douglas to tell him that they had a suspect, Thomas Eugene Creech, who had confessed in 1975, but his confession has been "misfiled." Walker Decl. ¶ 5. This was the first time law enforcement had ever told Douglas they had identified a suspect in Daniel's murder, and the first time he ever heard of Thomas Eugene Creech. Walker Decl. ¶¶ 4, 5. Jill Longhurst of the Ada County Prosecuting Attorney's Office ("Ada County") followed up not long after. Walker Decl. ¶ 5. She read Douglas some details about Creech's confession from police reports. Walker Decl. ¶ 6. She told Douglas that Creech had a clemency hearing in three days. *Id.* She urged Douglas to give her a victim impact statement for the hearing to support Ada County's attempt to shut

down any clemency. *Id.* Douglas felt rushed and reluctant. *Id.* It had been nearly 50 years and suddenly Daniel's case was solved? Douglas had a lot of questions. Walker Decl. ¶ 5.

The next day, the Sheriff's Department assured Douglas that they had evidence that connected Creech to Daniel's murder. Walker Decl. ¶ 7. Douglas told the Sheriff's Department that, based on the verbal evidence they had provided, he would agree Creech was the killer and the case was closed, if the Sheriff's Department would give Douglas access to Daniel's complete case file, which he had been pursuing for years. *Id.* The Sheriff's Department agreed to provide Douglas the complete file, so Douglas put together a statement to be presented at Creech's clemency hearing. *Id.*

Douglas received the material a week after the clemency hearing. Walker Decl. ¶ 8. It was a disorganized jumble of 3,000 pages with random police reports, lab reports, mugshots, and the like. *Id.* It included graphic photographs of Daniel's body, even though Douglas asked that they be removed. *Id.* This led Douglas to believe that the Sheriff's Department probably had not looked through the file before releasing it to him. Walker Decl. ¶ 16.

Creech's "confessions" were two summaries of statements that he made from 1975, one recorded by Sergeant Pat Adler from San Bernardino and one by a Detective Dykes in Idaho. Walker Decl. ¶ 9. Douglas noticed that some details were consistent with the police descriptions of the murder scene, but he found other major

3

discrepancies. *Id.* In his statement, Creech apparently claimed that a woman, Carol Spaulding, was involved, but police reports say that the second person was a man. *Id.*

Douglas also noticed a typed, undated, unsigned, index card in the file that referred to Thomas Creech as a "PUKE IN BOISE, IDAHO, WHO COPPED TO MANY MURDERS ALL ACROSS THE COUNTY," and who "STATED THAT HE COMMITED [sic] THE WALKER 187PC." Walker Decl. ¶ 10. The card read further that, "HIS INFO CHECKED OUT AND FO UND [sic] THAT HE MOST LIKELY WAS LYING. SEVERAL MURDERS HE COPPED TO WERE IMPOSSIBLE DUE TO HIM BEING INCARCERATED AT THE TIME THEY OCCURED [sic]." *Id.* It concluded that, "HE DID NOT HAVE ANY DETAILS ABOUT THE WALKER 187PC TO CONNECT HIM WITH CRIME." *Id.*

Douglas saw nothing in the file that police had re-investigated Creech or that his confession had "checked out," as they now claimed. Walker Decl. ¶ 11. He went back to the Sheriff's Department to get answers about why the Creech information disappeared for so long, and why there was nothing more in the file to show that Creech was reinvestigated. Walker Decl. ¶ 12. He also wanted to know whether the lost confessions were the only evidence that Creech had killed his brother. *Id.*

As to why Creech's statements had gone missing for so long, the Sheriff's Department told Douglas that they had been misfiled in Barstow rather than Needles, both of which are in San Bernardino County. Walker Decl. ¶ 15. But Douglas noticed that Adler's report had file numbers from both locations on it. Walker Decl. ¶ 16. He was given an explanation that the Needles number has recently been added,

which did not make sense to Douglas because the old-fashioned typewriter font was the same for both numbers. *Id.*

As to what newly discovered evidence now corroborated Creech's statements that he made in 1974 or 1975, Douglas was given only vague answers. Walker Decl. ¶ 17. Officers pointed to potential testimony from Carol Spaulding, but they had not spoken to her, and Douglas knew that she had denied knowledge of any incident involving a man in California. *Id.* The officers told Douglas there could be "ways around" the police reports that indicated the accomplice was a man rather than a woman. *Id.*

Douglas is concerned that the renewed "investigation" that state officials touted in the media and at Creech's clemency hearing was just a rediscovery of Creech's old statements in the 50-year-old file, some of which matched the crime scene, but others which did not. Walker Decl. ¶¶ 18–19. He is concerned that his brother's murder has not yet been "solved." Walker Decl. ¶ 19. And he is concerned that he may have been deceived into providing a victim's statement that was used, in part, to deny Creech clemency. *Id.* He, and the Walker family, support Creech's request for a slight delay so that there can be at least an attempt to answer these and other troubling questions. Walker Decl. ¶ 20.

### IV. The Court should grant Creech's motions for a preliminary injunction, and administrative stay of execution, and to expedite discovery.

The Walker family wants justice for Daniel, and they have not been provided with nearly sufficient information to consider Daniel's case solved. Walker Decl. ¶¶ 3, 8, 19. Instead, they question whether Daniel's murder was pinned on a convenient

scapegoat, and currently have more questions than answers. *Id.* Because the Walker family wants the chance to finally get answers about Daniel's murder, they support Creech's motions for a preliminary injunction, an administrative stay of execution, and to expedite discovery. Walker Decl. ¶ 20.

The state of Idaho claims that Daniel Walker is a murder victim of Thomas Eugene Creech. If that is true, then Daniel's family has a right to be treated fairly and with dignity during the clemency process, and they have a right to be heard.

For over 30 years, jurisdictions like Idaho have recognized the importance of giving crime victims and their families a voice in the criminal justice system. Under Article I, § 22 of the Idaho Constitution, victims have a right to be "treated with fairness, respect, dignity and privacy throughout the criminal justice process." Idaho Const. art. I, § 22(a). They also have a right to be heard at "all criminal justice proceedings considering a plea of guilty, sentencing, incarceration or release of a defendant, unless manifest injustice would result." *Id.* at § 22(2). This is also true in federal court, where crime victims have the right to be heard in certain proceedings under the Crime Victims' Rights Act, 18 U.S. Code § 3771. A crime victim or his family's right to be heard has echoes in fundamental notions of due process of law, and, as such, the victim or his family should have a *meaningful* opportunity to be heard. *Cf., Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (citation omitted).

The state of Idaho does not appear to have treated Douglas Walker or his family with the kind of dignity and respect that they were entitled to under Idaho law before soliciting their participation in Creech's clemency review. Douglas also does not believe that he had a *meaningful* opportunity to be heard on Creech's clemency request because he was not given all the facts beforehand. Instead, he is concerned that Ada County, in conjunction with the Sheriff's Department, has recast old and equivocal evidence of Creech's involvement as new and decisive to get Douglas on board with their narrative that his brother's murder had now been "solved." Walker Decl. ¶¶ 3, 8, 19. This is troubling, to say the least, when the ultimate penalty is at stake.

There are several strong hints in the record that support Douglas's suspicions. For years, law enforcement was indifferent to his inquiries. Walker Decl. ¶ 4. He was repeatedly told that the case was cold. *Id.* There were no suspects and no new leads. *Id.* Then, only when Creech's execution was imminent and Ada County was building a case against clemency, did this allegedly "new" evidence that tied Creech to Daniel's murder suddenly emerge. Walker Decl. ¶ 2. Douglas agreed that he would treat the case as closed with Creech as the perpetrator, albeit reluctantly, later learning that nothing in his file review showed a re-investigation or new evidence beyond the statements attributed to Creech from 1974 or 1975. Walker Decl. ¶¶ 7, 8.

\* \* \*

Thomas Creech may be the person responsible for Daniel Walker's death. Douglas Walker files this brief not to support Creech personally, but because he

7

wants justice for his brother. If Creech murdered Daniel, then the Walker family wants to know that, and they do not know that with anything approaching certainty now. Creech has grown old in prison over the last 50 years since Daniel was murdered and over the 40 years since he committed the Idaho murder that put him on death row. Yet Idaho is pushing to execute him in less than 21 days and opposes any request to delay the execution, however slightly, so that this Court can explore whether the prosecuting attorney offered false evidence at a hearing to decide whether Creech lives or dies. After so much time has passed, there is no prejudice to the State in allowing Creech just a reasonable bit of time more to litigate that issue. One the other hand, if Creech is executed on November 13, the Walker family will likely live with the uncertainty of whether Creech was responsible for Daniel's murder for rest of their lives.

**V.     Conclusion**

Douglas Walker respectfully requests that the Court grant Creech's motions for a preliminary injunction, an administrative stay of execution, and to expedite discovery.

Respectfully submitted on this 28th day of October, 2024.

/s/ Maya P. Waldron  
/s/ Craig H. Durham  
*Attorneys for Amicus Curiae*  
*Douglas Walker*